Andrew R. Wolf, Esq.
The Wolf Law Firm, LLC
1520 U.S. Hwy. 130, Suite 101
North Brunswick, NJ 08920
(732) 545-7900/ fax: (732) 545-1030

David C. Ricci, Esq.
The Law Office of David C. Ricci, LLC
51 JFK Parkway, First Floor West
Short Hills, NJ 07078
(973) 218-2627/ fax: (973) 206-6955

Christopher J. McGinn, Esq.
The Law Office of Christopher J. McGinn
20 Nassau St., Suite 250W-2
Princeton, NJ 08542
(732) 937-9400/ fax: (800) 931-2408

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RACHAEL A. PAGE, individually and on behalf of others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>GPB CARS 12, LLC d/b/a NORTH PLAINFIELD NISSAN, NISSAN EXTENDED SERVICES NORTH AMERICA, G.P., and NATION MOTOR CLUB, LLC a/k/a Nation Safe Drivers a/k/a NSD<br><br>Defendants | **CLASS ACTION COMPLAINT AND JURY DEMAND** |

## NATURE OF ACTION

1.  Plaintiff brings two claims against GPB Cars 12, LLC d/b/a North Plainfield Nissan (hereinafter "NP Nissan" or "the Dealership") on behalf of herself and others similarly situated arising from Defendants' deceptive and unlawful sales practices.

2.  The Dealership sold Plaintiff and others similarly situated vehicles in excess of advertised prices, in violation of the "bait and switch" provisions of the New Jersey Motor Vehicle Advertising Practices ("MVAP"), Regulations, N.J.A.C. 13:45A-26A.4, the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.* and the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 – 18.  The Dealership also made the

purchase of a vehicle warranty mandatory for providing financing. It unlawfully added that finance charge to the amount financed in violation of the federal Truth in Lending Act (TILA), 15 U.S.C. § 1602(h), and Regulation Z, 12 C.F.R. § 226.2(a)(16), the CFA, and TCCWNA.

3.    Plaintiff also brings claims against Defendant Nissan Extended Services North America, G.P. (NESNA) and Defendant Nation Motor Club, LLC a/k/a Nation Safe Drivers (NSD) relating to their failure to provide Plaintiff and others similarly situated with correct refund amounts for the service contract and a tire and wheel protection plan contract which the Dealership sold to Plaintiff.

4.    These contracts are subject to the New Jersey Consumer Service Contract Act, which mandates certain provisions and disclosures in every contract, such as a minimum time period during which contract are cancelable for a refund and the deadline for the refund to be issued.

5.    Plaintiff timely submitted cancellations according to the procedures in the two contracts. Defendant NMC refused to provide Plaintiff with a refund of the sale price for the tire and wheel plan. Defendant NESNA provided Plaintiff with a refund two months late and refused to pay her the statutory 10% per month penalty.

## PARTIES

6.    Plaintiff Rachael A. Page resided in Pound Ridge, New York, at the time she purchased the vehicle and now lives in Charleston, South Carolina.

7.    Defendant GPB Cars 12, LLC d/b/a North Plainfield Nissan operates a car dealership located at 545 Rt. 22 W., North Plainfield, New Jersey 07060.

8.    Defendant Nissan Extended Services North America, G.P. (NESNA) is the provider of the vehicle service contract that NP Nissan sold to Plaintiff.

9.    Defendant Nation Motor Club, LLC (NSD) is the provider of the tire and wheel protection plan contract that NP Nissan sold to Plaintiff.

## JURISDICTION AND VENUE

10.    Jurisdiction of this Court arises under 15 U.S.C. § 1640(e) and 28 U.S.C. § 1331.

11.    Venue in this action properly lies in this federal district pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims took place within this federal district, and because Defendants regularly transact business within this federal district and, therefore, reside in the State of New Jersey within the meaning of 28 U.S.C. § 1391(b) and (c).

## FACTUAL ALLEGATIONS

12.   At all times relevant, NESNA enters into contracts between itself and natural persons who buy or lease motor vehicles for personal, family, or household purposes and for a specific duration, for a provider fee or other separately stated consideration, including the following types of contracts:

◆   to perform, or to provide indemnification for the performance of, the maintenance, repair, replacement, or service of property for the operational or structural failure of the property due to a defect in materials or workmanship or due to normal wear and tear, and which may include additional provisions for incidental payment of indemnity under limited circumstances, including but not limited to towing, rental, and emergency road services, and other road hazard protections.

◆   the repair or replacement of tires or wheels on a motor vehicle damaged as a result of coming into contact with road hazards including but not limited to potholes, rocks, wood debris, metal parts, glass, plastic, curbs, or composite scraps;

◆   the removal of dents, dings, or creases on a motor vehicle that can be repaired using the process of paintless dent removal without affecting the existing paint finish and without replacing vehicle body panels, sanding, bonding, or painting;

◆   the repair of small motor vehicle windshield chips or cracks which may include replacement of the windshield for chips or cracks that cannot be repaired.

13.   At all times relevant, NSD enters into contracts or agreements between itself and natural persons who buy or lease motor vehicles for personal, family, or household purposes and for a specific duration, for a provider fee or other separately stated consideration, including the following types of contracts:

◆   to perform, or to provide indemnification for the performance of, the maintenance, repair, replacement, or service of property for the operational or structural failure of the property due to a defect in materials or workmanship or due to normal wear and tear, and which may include additional provisions for incidental payment of indemnity under limited circumstances, including but not limited to towing, rental, and emergency road services, and other road hazard protections.

◆   the repair or replacement of tires or wheels on a motor vehicle damaged as a result of coming into contact with road hazards including but not limited to potholes, rocks, wood debris, metal parts, glass, plastic, curbs, or composite scraps;

◆   the removal of dents, dings, or creases on a motor vehicle that can be repaired using the process of paintless dent removal without affecting the existing paint finish and without replacing vehicle body panels, sanding, bonding, or painting;

◆   the repair of small motor vehicle windshield chips or cracks which may include replacement of the windshield for chips or cracks that cannot be repaired.

14.   At all times relevant, NP Nissan was licensed by the New Jersey Motor Vehicle Commission to sell or lease motor vehicles.

15. At all times relevant, NP Nissan was licensed by the New Jersey Department of Insurance as a retail installment seller.

16. At all times relevant, NP Nissan sold or offered for sale motor vehicles in ordinary course of business.

17. At all times relevant, NP Nissan sold or offered for sale five or more used motor vehicles in the previous 12-month period.

### I.    Allegations Regarding the Sale of the Vehicle

18. In early April 2018, Plaintiff was shopping for a vehicle for personal usage.  She saw an online advertisement on the NP Nissan website offering a used 2015 Toyota Prius, VIN JTDKN3DU4F0463681 for $16,898.00.

19. Plaintiff took screen shots of the advertisement on her cell phone. A copy of the advertisement (hereinafter the "Online Advertisement") for the Prius is attached as **Exhibit A**.

20. The Online Advertisement identifies an advertised price of $16,898.00 without any disclaimers, qualifiers or limitation next to the advertised price that, in fact, limited or negated the advertised price.

21. Plaintiff contacted NP Nissan and the Dealership's representative told her that the vehicle was still available at that price.

22. On or about April 26, 2018, Plaintiff visited NP Nissan to look at the Prius and meet with a sales representative.

23. Plaintiff told the Dealership's sales representative she was interested in purchasing the Prius and that the price listed online was $16,898.00.

24. Plaintiff test drove the Prius and paid the Dealership a $500.00 deposit.

25. On April 28, 2018, Plaintiff returned to the Dealership to purchase the Prius.

26. The sales representative told Plaintiff that there were non-optional fees that increased the vehicle's price from the advertised price of $16,898.00 to $17,573.76, a difference of $675.76.

27. The sales representative told Plaintiff that she would have to purchase a $3,500 vehicle service contract in order to obtain financing from the Dealership.  She was told that unless she agreed to pay that fee the Dealership would not provide her with a loan

28. The sales representative recommended that Plaintiff purchase coverage for tire and wheel protection.

29.  A representative of the Dealership prepared the following documents for Plaintiff to sign: a Motor Vehicle Retail Order ("Retail Order"), the Retail Installment Sale Contract (RISC), the QualityGuard Plus Vehicle Service Contract ("VSC"), and the Security Plus Tire & Wheel Protection Plan ("TWPP Contract").  Attached here, with personal identifiers redacted, are copies of the Retail Order and RISC as Exhibit B, the VSC as Exhibit C, and the TWPP Contract as Exhibit D.

30.  Plaintiff purchased the Prius for personal, family or household purposes.

31.  Others similarly situated purchased motor vehicles from the Dealership and other motor vehicle dealers in New Jersey for personal, family or household purposes.

32.  The Retail Order discloses the following charges:

   a.  Price of Unit:  $17,573.76

   b.  Tire and Wheel: $1,000.00

   c.  Service Contract: $3,500.00;

   d.  Documentary Fee: $498.97;

   e.  Registration/Title Fee (Estimated): $400

   f.  Sales Tax $1,627.94

33.  The $17,573.76 "Price of the Unit" is $675.76 greater than the advertised price of $16,898.

34.  The RISC identified the price of the vehicle as $20,201.70, inclusive of $1,627.94 sales tax.

35.  This amount ostensibly included the $1,000 Tire and Wheel charge.

36.  The RISC added the $3,500 "Service Contract" charge to the amount financed instead of the finance charge.

37.  The Dealership assigned the RISC to Wells Fargo Dealer Services.

**II.    Allegations Regarding the NESNA Vehicle Service Contract**

38.  NESNA was contractually obligated to Plaintiff and others similarly situated for the VSC and other contracts it provides for motor vehicles that it sells through its network of motor vehicle dealers located in New Jersey.

39.  NESNA drafted the forms of the VSC and other contracts it provides for motor vehicles for motor vehicles sold or leased to Plaintiff and others similarly situated.

40.  The VSC discloses a $3,500.00 purchase price, a 4/28/2018 effective date, and a 14,448 current odometer reading.

41.  Section 8 Cancellation of the VSC contains a cancellation provision which states in relevant part:

You or a person authorized by you may cancel this VSC by submitting a written cancellation request which includes the mileage (odometer reading) of the vehicle at the time the cancellation is to be effective, and mailing this information to your selling dealer as listed in the Application/Declaration.
****
If this VSC is cancelled within (60) days from the VSC effective date, then you will receive a full refund provided you have not filed a claim. If you have filed a claim or if this VSC is cancelled after sixty (60) days, then the refund will be calculated based on the greater of the time in force or the mileage driven compared to the total time or mileage of your term. In addition, a process fee of$50 will be automatically deducted, if applicable, from the refund.
****
NOTE: If this VSC was financed, then the refund will be paid to the lienholder unless proof of pay-off is submitted.

42.  Section 7 Options/Exclusions of the VSC sets forth the following:

These requirements apply to VSCs sold in the following states:
****
**New Jersey:** Obligations of NESNA under this VSC are backed by the full faith and credit of the provider.
Cancel: NESNA will pay you a 10% per month penalty, based upon the purchase price of this VSC, if the refund or credit is not completed within 45 days of the cancellation of this VSC.

## III.    Allegations Regarding the NSD Tire & Wheel Protection Plan

43.  NSD was contractually obligated to Plaintiff and others similarly situated for the TWPP Contract and other contracts it provides for motor vehicles through its network of motor vehicle dealers located in New Jersey.

44.  NSD drafted the TWPP Contract and other contracts it provides for motor vehicles sold or leased to Plaintiff and others similarly situated.

45.  The TWPP Contract discloses a $1,000.00 retail cost and a 4/28/2018 effective date.

46.  The Cancellation provision of the TWPP Contract states in relevant part:

To initiate the cancellation process, **You** must contact the **Selling Dealer** or the Administrator. If this Agreement is cancelled by **You** within thirty (30) days from the date of purchase, **You** will receive a refund of the full purchase price. If **You** cancel this Agreement after the first thirty (30) days, or if a claim was made during this time period, **You**  will be refunded on a prorated basis less the amount of any claims paid or payable. If the Administrator does not refund the purchase price within forty five (45) days, they will pay a penalty of ten percent (10%) of the purchase price for each thirty (30) day period that the refund remains unpaid.

47.   The TWPP Contract identifies NMC as the "Obligor" under the contract.

### IV.    Allegations Regarding Plaintiff's Cancellations of the Vehicle Service Contract and the Tire & Wheel Protection Plan

48.   Shortly after her purchase, Plaintiff decided that she wanted to cancel the VSC and the TWPP contracts.

49.   Plaintiff notified NP Nissan she wanted to cancel both contracts.

50.   A representative of NP Nissan filled out the Dealer Cancellation Request Form (the "Cancellation Form") for Plaintiff, dated May 14, 2018.

51.   On May 15, 2018, Plaintiff returned to the dealership to pick up her permanent registration and plates and to execute the cancellation forms for the VSC and the TWPP Contract. Copies with personal identifiers redacted of NP Nissan Cancellation Request Form for the VSC ("VSC Cancellation Form"), and NP Nissan Cancellation Request Form for the TWPP Contract ("TWPP Cancellation Form"), are attached here as **Exhibit E.**

52.   On May 15, 2018, she signed both forms and sent gave them to the Dealership to be submitted to NESNA and NSD.

53.   Plaintiff submitted the executed forms to cancel the VSC and the TWPP Contract 17 days after the purchase date of the contracts.

54.   Plaintiff did not make a claim under the VSC prior to canceling the contract on May 15, 2018.

55.   Plaintiff did not make a claim under the TWPP Contract prior to canceling the contract on May 15, 2018.

56.   Plaintiff was entitled to a timely refund of the full purchase price of the VSC under the terms of the contract.

57.   Plaintiff was entitled to a timely refund of the full purchase price of the TWPP Contract under the terms of the contract.

58.   On July 31, 2018, Plaintiff's account with the lienholder, Wells Fargo Dealer Service, was credited with a $3,500.00 refund for the VSC.

59.   Pursuant to the terms of the RISC, Plaintiff was charged interest on the $3,500 service contract fee during the time period from when she executed the RISC on April 28, 2018 until the $3,5000 credit was applied on July 30, 2018.

60.   No refund for the TWPP Contract has been credited to Plaintiff's account or provided to Plaintiff directly.

### V.    Allegations Regarding Plaintiff's Arbitration Demand

61. The Retail Order contains an agreement to arbitrate disputes between "the parties to this agreement." See Ex. B (the "Arbitration Clause").

62. The Arbitration Clause states in part: "The parties to this agreement agree to arbitrate all claims, disputes, or controversies, including all statutory claims and any state or federal claims ("claims"), that may arise out of or relating to this agreement and the sale or lease identified in this agreement."

63. The Arbitration Clause states that the "arbitration shall be administered by the American Arbitration Association..."

64. The Arbitration Clause further states that "Dealership shall advance both party's filing, service, administration, arbitrator, hearing or other fees, subject to reimbursement by decision of the arbitrator."

65. The Arbitration Clause states that the Parties also agree that they "may not pursue any claim, even in arbitration, on behalf of a class or to consolidate their claim with those of other persons or entities."

66. NP Nissan uses the Arbitration Clause in their contracts to shield themselves from class actions for bait and switch on vehicles' advertised prices and for other unlawful practices.

67. The Arbitration Clause requires NP Nissan to pay Plaintiff's portion of the filing fee, $200.00, for any dispute that Plaintiff initiated.

68. Pursuant to the Arbitration Clause, Plaintiff filed an arbitration demand with the American Arbitration Association ("AAA") on or about September 25, 2018 against the three Defendants named here. She contemporaneously served the arbitration demand on each via certified mail, return receipt requested.

69. Plaintiff's arbitration demand was delivered to NP Nissan on September 27, 2018; to NESNA on October 1, 2018; and to NSD on October 1, 2018.

70. On or about October 3 and 18, 2018, AAA sent letters to NP Nissan, NESNA and NSD notifying them that Plaintiff had filed an arbitration demand and requested payment of the AAA fee to administer the arbitration.

71. On or about October 22, 2018, NSD sent a letter to AAA stating that NSD was not subject to the arbitration clause and would not participate in the arbitration proceeding. NSD further stated that as set forth in the TWPP Contract' arbitration provision, NSD agreed to arbitrate only those claims regarding disputes "arising from the amount of a covered loss under the contract, or whether or not coverage applies to a claim for benefits arising under the contract."

72. On October 29, 2018, Plaintiff's counsel dismissed the arbitration demand as to NSD.

73. On or about October 29, 2018, counsel for NESNA sent a letter to AAA stating that NESNA was not subject to the arbitration clause and would not participate in the arbitration proceeding.

74. On October 29, 2018, Plaintiff's counsel sent a letter via regular mail and facsimile to Sam Asman, NP Nissan's General Manager further notifying the Dealership that it had not complied with the arbitration demand.

75. NP Nissan did not respond to the arbitration demand.

76. On or about October 31, 2018, NSD presented Plaintiff's counsel with a settlement offer that was refused as inadequate.

77. On or about November 23, 2018, NP Nissan presented Plaintiff with a settlement offer with regard to her claims regarding the Tire and Wheel cancellation.  The offer was rejected as inadequate.

78. On November 28, 2018, AAA emailed a letter (hereinafter the "AAA Denial Letter") to Plaintiff's counsel stating that AAA declined to administer the arbitration filed by Plaintiff. A copy of the AAA Denial Letter is attached as **Exhibit F**.

79. The Denial Letter states in relevant part the following:

    As of this date we have not received the required fees from the business GPB Cars 12, LLC d/b/a North Plainfield Nissan in this matter. Accordingly, we must decline to administer this case and have closed our file. According to R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

    Further, because the business' failure to remit the foregoing constitutes a failure to adhere to our policies regarding consumer claims, we may decline to administer future consumer arbitrations involving GPB Cars 12, LLC d/b/a North Plainfield Nissan. The AAA's consumer policies can be found on the AAA's website, www.adr.org. We request that the business remove the AAA name from its consumer arbitration clause so that there is no confusion to the public regarding our decision.

## CLASS ACTION ALLEGATIONS

80. Plaintiff brings this action individually and may properly proceed as a class action on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

81. The proposed classes are defined as follows:

    CLASS A:
    All natural persons who, purchased a vehicle from NP Nissan and: A) at any time on or after the day one year prior to the date this Complaint was filed,

entered a finance agreement with NP Nissan for the purchase of a vehicle where the purchase price of the Service Contract, that NP Nissan represented as being mandatory for the provision of credit, was included in the amount financed of that agreement; and/or B) at any time on or after the day six years prior to the date this Complaint was filed, where the initial sales documents listed a base purchase price for the vehicle that was more than the price listed in any concurrent advertisement for the vehicle.

CLASS B:
All natural persons who, at any time on or after the day six years prior to the date this Complaint was filed, purchased a "service contract" or a "motor vehicle ancillary protection product" as defined by the CSCA at N.J.S.A. 56:12-87 incident to the purchase or lease of a motor vehicle for personal, family, or household purposes, from a licensed motor vehicle dealer located in New Jersey, under which NESNA or NSD was contractually obligated to the contract holder, and the contract holder submitted a cancellation request according to the cancellation procedures in the contract or agreement that did not result in a refund of the total amount, including statutory penalties, if any, to which the person was entitled under the terms of the contract or agreement.

CLASS C:
All natural persons who purchased a vehicle from NP Nissan at any time on or after the day six years prior to the date this Complaint was filed.

CLASS D:
All natural persons who, at any time on or after the day six years prior to the date this Complaint was filed, purchased a "service contract" or a "motor vehicle ancillary protection product" as defined by the CSCA at N.J.S.A. 56:12-87 incident to the purchase or lease of a motor vehicle for personal, family, or household purposes, from a licensed motor vehicle dealer located in New Jersey, under which NESNA or NSD was contractually obligated to the contract holder.

82.  The identity of each member of the classes is readily ascertainable from the defendants' records.

83.  This action has been brought and may properly be maintained as a class action pursuant to the provisions of Fed. R. Civ. P. 23(a) because there is a well-defined community interest in the litigation in that:

    a.  Numerosity. Plaintiff is informed and believes, and on that basis alleges, that the members of the classes are so numerous that joinder of all members would be impractical.

    b.  Commonality. There are questions of law and fact common to the members of the classes that predominate over questions affecting only individuals. These common questions include:

i. Whether NP Nissan engaged in a pattern and practice of adding a charge for a service contract to the amount financed when that fee was required to obtain financing;

ii. Whether NP Nissan's adding such a finance charge to the amount financed violated TILA; the CFA, and/or TCCWNA;

iii. Whether NP Nissan's internet website listings for its vehicles are advertisements subject to the Motor Vehicle Advertising Practices (MVAP) Regulations, N.J.A.C. 13:45A-26A.1;

iv. Whether NP Nissan violated the "Bait and switch" provision of the MVAP Regulations, at N.J.A.C. 13:45A-26A.4 as to the Plaintiff and the members of proposed Class by selling vehicles at a base price more than the advertised price;

v. Whether NP Nissan's violation of the MVAP Regulations constitutes a per se violation of the CFA, N.J.S.A 56:8-2.

vi. Whether NP Nissan's violation of the MVAP Regulations constitutes a misrepresentation, deception, fraud and/or unconscionable commercial practice in violation of the CFA at N.J.S.A. 56:8-2

vii. Whether NP Nissan's offering, entering into, or displaying Motor Vehicle Retail Orders that included a provision charging a base sales price in violation of the MVAP Regulations constitutes a violation of TCCWNA, N.J.S.A. 56:12-15.

viii. Whether NESNA has a policy or practice of failing to issue full refunds according to the terms of its contracts and agreements;

ix. Whether NESNA's practices violate the CSCA and the CFA;

x. Whether NESNA's Cancellation Form contains provisions contrary to the CSCA, and whether the contrary provisions are violations of the TCCWNA;

xi. Whether NSD has a policy and/or practice of failing to issue full refunds according to the terms of its contracts and agreements;

xii. Whether NSD's practices violate the CSCA and the CFA;

c. Typicality. Plaintiff's claims are each typical of the claims of the members of the classes she represents because all such claims arise out of Defendants' form contracts and routine business practices.

d. Adequacy. Plaintiff will fairly and adequately protect the interests of the class members because she is committed to vigorously litigating this matter, has

retained competent counsel experienced in handling consumer class action lawsuits. Neither she nor her counsel have any interests adverse to the absent class members or which might cause them not to vigorously pursue the instant class action lawsuit.

84. This action has been brought and may be maintained as a "B3 - class" As to Class A and Class B. Certification of a class under Fed . R. Civ. P. 23(b)(3) is appropriate in that the questions of law and fact common to members of the Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy because individual joinder of all members would be impracticable, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender, an important public interest will be served by addressing the matter as a class action, substantial expenses to the litigants and to the judicial system will be realized, and difficulties are unlikely in the management of a class action.

85. Alternatively, this action may be maintained as a "B2 - class" as to Class C and Class D Certification of a class under Fed . R. Civ. P. 23(b)(2) is appropriate in that NP Nissan, NESNA and NSD have acted or refused to act on grounds that apply generally to Class C and Class D respectively, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

86. Based on discovery and further investigation, at the time Plaintiff moves for class certification, she may seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

## CLASS CLAIMS

### FIRST COUNT
### Violations of the Truth-in-Lending Act for Class A and a Portion of Class C
### as to North Plainfield Nissan

87. Plaintiff on behalf of herself and others similarly situated repeats and realleges all prior allegations as if set forth at length herein.

88. The purpose of the federal Truth in Lending Act ("the TILA"), 15 U.S.C. § 1601, *et seq.,* and Regulation Z (Reg. Z"), 12 C.F.R. § 1026, *et seq.,* promulgated thereto, is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing […] practices." 15 U.S.C. § 1601(a).

89. The Truth in Lending Act ("TILA"), 15 U.S.C. § 1638(b)(1), and Regulation Z, 12 C.F.R. § 226.17(a)(1) and (b), mandate timely written disclosures of financing terms.

90. Regulation Z, 12 C.F.R. § 226.17 (a) and (b), interpreting TILA, states as follows, in relevant part:

a.  Form of disclosures.

(1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep.

b.  Time of disclosures. The creditor shall make disclosures before consummation of the transaction.

91.  Regulation Z, 12 C.F.R. § 226.18, interpreting TILA, states as follows, in pertinent parts:

For each transaction, the creditor shall disclose the following information as applicable:
a.  Creditor.
b.  Amount financed.
c.  Itemization of amount financed.
d.  Finance charge.

92.  The purchase of the Prius by Plaintiff and of motor vehicles by others similarly situated from NP Nissan are consumer credit sales, as defined by the Federal Truth in Lending Act (the "TILA"), at 15 U.S.C. § 1602(h), and Reg. Z, at 12 C.F.R. § 1026.2(a)(16).

93.  The RISCs prepared by NP Nissan for the purchases of Plaintiff and others similarly situated were the only documents that contained the financial disclosures required by the TILA for the credit sale of the vehicles.

94.  At all times relevant, the NP Nissan was a "creditor" within the meaning of the TILA, 15 U.S.C. § 1602(g), and Regulation Z, 12 C.F.R. § 1026.2(a)(17).

95.  At all times relevant, Plaintiff and others similarly situated were "consumers" within the meaning of TILA, 15 U.S.C. § 1602(i), and Reg. Z, 12 C.F.R. § 1026.2(a)(11).

96.  NP Nissan could have taken the steps necessary to bring its actions within compliance with the TILA, but neglected to do so and failed to adequately review its actions to ensure compliance with the law.

97.  Pursuant to Reg. Z, at 12 C.F.R. § 1026.18(b), NP Nissan was required accurately to disclose the Amount Financed in the credit sales to Plaintiff and others similarly situated.

98.  Pursuant to Reg. Z, at 12 C.F.R. § 1026.18(d)(2), NP Nissan was required accurately to disclose the Finance Charge in the credit sales to Plaintiff and others similarly situated.

99.  Pursuant to Reg. Z, at 12 C.F.R. § 1026.18(e), NP Nissan was required accurately to disclose the Annual Percentage Rate in the credit sales to Plaintiff and others similarly situated.

100.  Since NP Nissan told Plaintiff and others similarly situated the purchase of the service contract was required in order to obtain financing, the $3,500 charge for the service contract was a fee incident to the extension of credit.

101. As a fee incident to the extension of credit, NP Nissan was required to include the $3,500.00 fee as part of the Finance Charges and not part of the Amount Financed.

102. By including the $3,500.00 in the Amount Financed instead of the Finance Charge, NP Nissan violated the TILA and Regulation Z by failing to make accurate disclosures of the Annual Percentage Rate, Finance Charge and Amount Financed.

103. Plaintiff and others similarly situated have been damaged by NP Nissan's violations of the TILA.

104. NP Nissan is liable to Plaintiff and others similarly situated for statutory damages of twice the finance charge up to $2000.00, plus actual damages, pursuant to the TILA at 15 U.S.C. § 1640(a)(2)(A)(i).

## SECOND COUNT
### Violations of the Consumer Fraud Act for Class A and a Portion of Class C as to North Plainfield Nissan

105. Plaintiff on behalf of herself and others similarly situated repeats and realleges all prior allegations as if set forth at length herein.

106. By including service contract fees in the Amount Financed instead of the Finance Charge, the RISCs of Plaintiff and others similarly situated overstated the Amount Financed.

107. By including service contract fees in the Amount Financed instead of the Finance Charge, Plaintiff and others similarly situated incurred excess interest charges on the overstated Amount Financed.

108. By paying excess interest charges on the overstated Amount Financed, Plaintiff and others similarly situated suffered ascertainable losses.

109. By paying excess interest charges on the overstated Amount Financed, Plaintiff and others similarly situated suffered ascertainable losses equal to the excess interest paid on their RISCs.

## THRD COUNT
### Violations of the Consumer Fraud Act and the Motor Vehicle Advertising Practices Regulations for Class A and a Portion of Class C as to North Plainfield Nissan

110. Plaintiff on behalf of herself and others similarly situated repeats and realleges all prior allegations as if set forth at length herein.

111. As sellers of motor vehicles in the State of New Jersey, NP Nissan is subject to the Motor Vehicle Advertising Practices regulations (hereinafter the "MVAP regulations"), N.J.A.C. 13:45A-26A.1, *et seq.*

112. The MVAP Regulations were promulgated under the CFA pursuant to N.J.S.A. 56:8-4, and a violation of the MVAP Regulations is a *per se* unlawful act under the CFA.

113. NP Nissan is a "dealer" as defined by the MVAP Regulations, at N.J.A.C. 13:45A-26A.3.

114. NP Nissan is an "advertiser" as defined by the MVAP Regulations, at N.J.A.C. 13:45A-26A.3.

115. NP Nissan is a subject to the MVAP Regulations.

116. The Online Advertisement is an "Advertisement" as defined by the MVAP Regulations, at N.J.A.C. 13:45A-26A.3.

117. "All costs to be paid by a consumer" is defined by N.J.A.C. 13:45A-26A.5(a)(2) as meaning "manufacturer-installed options, freight, transportation, shipping, dealer preparation, and any other costs to be borne by a consumer except licensing costs, registration fees, and taxes."

118. The $16,898.00 price in NP Nissans' Advertisement is an "Advertised price," meaning the total dollar amount required to purchase or lease a motor vehicle unless limitation or disclaimers are stated in the advertisement pursuant to the MVAP Regulations.

119. NP Nissan's $17,573.75 "Price of Unit" in the Retail Order is part of the Advertised Price pursuant to the MVAP Regulations.

120. NP Nissan's $498.97 "Documentary Fee" in the Retail Order is part of the Advertised Price pursuant to the MVAP Regulations.

121. Together the $17,573.75 "Price of Unit" and the $498.97 "Documentary Fee" in the Retail Order total $18,072.72 and exceed the $16,898.00 advertised price by $1,174.72.

122. NP Nissan's refusal to sell or lease the advertised vehicle in the transactions with Plaintiff and others similarly situated at the price set forth in the advertisements violated the MVAP Regulations at N.J.A.C. 13:45A-26A.4(a)(2)(i) and was a direct violation of the CFA at N.J.S.A. 56:8-2.

123. As a result of NP Nissan's unlawful acts under the CFA and the MVAP Regulations, Plaintiff and others similarly situated have suffered ascertainable losses.

124. As a result of NP Nissan's unlawful acts under the CFA and the MVAP Regulations, Plaintiff's ascertainable loss is $1,174.72.

## FOURTH COUNT
### Violations of the Truth-in-Consumer Contract, Warranty, and Notice Act
### for Class A and a Portion of Class C as to North Plainfield Nissan

125. Plaintiff on behalf of herself and others similarly situated repeats and realleges all prior allegations as if set forth at length herein. The Retail Order and RISC are "consumer contracts" or "consumer notices" subject to the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 – 18, ("TCCWNA").

126. NP Nissan is a seller and is subject to the TCCWNA.

127. The TCCWNA, at N.J.S.A. 56:12-15, states, in pertinent part:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

128. The TILA, CFA and the MVAP Regulations create clearly established rights of Plaintiff and others similarly situated or responsibilities of NP Nissan.

129. By offering, displaying, or entering into the RISC with Plaintiff and others similarly situated that contained inaccurate disclosures of the Annual Percentage Rate, Finance Charge and Amount Financed in violation of the TILA, NP Nissan violated TCCWNA.

130. Plaintiff and others similarly situated suffered adverse consequences because of the overstated Amounts Financed in their RISCs, including without limitation paying excess interest on the contracts.

131. By offering, displaying, or entering into the Retail Order with Plaintiff that stated a total price, except licensing costs, registration fees, and taxes, that was greater than the advertised price in violation of the MVAP Regulations (N.J.A.C. 13:45A-26A.4(a)(2)(i)) and the CFA (N.J.S.A. 56:8-2), NP Nissan violated TCCWNA.

132. By offering, displaying, or entering into the RISC with Plaintiff that stated a total price, except licensing costs, registration fees, and taxes, that was greater than the advertised price in violation of the MVAP Regulations (N.J.A.C. 13:45A-26A.4(a)(2)(i)) and the CFA (N.J.S.A. 56:8-2), NP Nissan violated TCCWNA.

133. By offering, displaying, or entering into the RISC with Plaintiff and others similarly situated that stated a total price, except licensing costs, registration fees, and taxes, that was greater than the advertised price in violation of the MVAP Regulations (N.J.A.C. 13:45A-26A.4(a)(2)(i)) and the CFA (N.J.S.A. 56:8-2), NP Nissan violated TCCWNA.

134. Plaintiff and others similarly situated suffered adverse consequences because of the higher prices disclosed in their Retail Orders and RISCs, including without limitation paying more than the advertised prices.

135. Plaintiff and others similarly situated is entitled to a civil penalty of not less than $100.00 for each contract or notice containing a violation of TCCWNA, plus actual damages, attorneys' fees, and costs pursuant to N.J.S.A. 56:12-17.

136. Plaintiff is entitled to a civil penalty of not less than $200.00, plus actual damages, attorneys' fees, and costs pursuant to N.J.S.A. 56:12-17.

## FIFTH COUNT
### Violations of the Consumer Service Contract Act for Class B and a Portion of Class D as to NESNA

137. Plaintiff on behalf of herself and others similarly situated repeats and realleges all prior allegations as if set forth at length herein.

138. The Consumer Service Contract Act ("CSCA"), N.J.S.A. 56:12-87 to -96, regulates the sale of "service contracts" and "motor vehicle ancillary protection products" sold in New Jersey.

139. A violation of the CSCA is a *per se* violation of the Consumer Fraud Act. N.J.S.A. 56:12-96.

140. The CSCA, at N.J.S.A. 56:12-87, defines a "motor vehicle ancillary protection product" to mean:

> a contract or agreement between a provider and a consumer for a specific duration, for a provider fee or other separately stated consideration, to perform one or more of the following with respect to a motor vehicle:
>
> (1) the repair or replacement of tires or wheels on a motor vehicle damaged as a result of coming into contact with road hazards including but not limited to potholes, rocks, wood debris, metal parts, glass, plastic, curbs, or composite scraps;
>
> (2) the removal of dents, dings, or creases on a motor vehicle that can be repaired using the process of paintless dent removal without affecting the existing paint finish and without replacing vehicle body panels, sanding, bonding, or painting;
>
> (3) the repair of small motor vehicle windshield chips or cracks which may include replacement of the windshield for chips or cracks that cannot be repaired.

141. The CSCA, at N.J.S.A. 56:12-87, defines a "service contract" to mean:

> a contract or agreement between a provider and a consumer for any duration, for a provider fee or other separately stated consideration, to perform, or to provide indemnification for the performance of, the maintenance, repair, replacement, or service of property for the operational or structural failure of the property due to a defect in materials or workmanship or due to normal wear and tear, and which may include additional provisions for incidental payment of indemnity under limited circumstances. In the case of a motor vehicle, such circumstances may include towing, rental, and emergency road services, and other road hazard

protections....A service contract also includes a motor vehicle ancillary protection product.

142. The VSC is a "service contract" as defined by the CSCA at N.J.S.A. 56:12-87.

143. The VSC is one of many different "service contracts" sold to Plaintiff and others similarly situated through motor vehicle dealers located in New Jersey.

144. Plaintiff and others similarly situated are "service contract holders" or "contract holders" as defined by the CSCA at N.J.S.A. 56:12-87.

145. NESNA is the person who is contractually obligated to Plaintiff under the terms of the VSC, and is therefore the "provider" as defined by the CSCA at N.J.S.A. 56:12-87.

146. NESNA is subject to the CSCA.

147. Pursuant to the CSCA at NJSA 56:12-93(k) service contracts sold in New Jersey must contain provisions that specify "the conditions governing the cancellation of the service contract by the service contract holder, which shall:"

> (1) permit the contract holder, if the contract holder makes no claim arising under the contract, to cancel the contract:
>
> > (a) within 10 days of receipt of the contract, *or a longer period specified in the contract*, if delivered at the time of purchase; or
> >
> > (b) within 20 days of the date the contract was sent to the contract holder, *or a longer period specified in the contract,* if not delivered at the time of purchase; and [emphasis added]
>
> (2) if cancelled within the time period specified in subparagraph (a) or (b) of paragraph (1) of this subsection, require the provider to provide the contract holder with the full purchase price or amount paid on the contract by refund or credit to the account of the contract holder, and to additionally pay the contract holder a 10% per month penalty, based upon the purchase price of the contract, if the refund or credit is not completed within 45 days of the cancellation of the contract;

148. Pursuant to the cancellation provision of the VSC, because Plaintiff canceled the contract within 60 days of purchase, she was entitled to a full refund or credit of the $3,500.00 purchase price within 45 days of the May 15, 2018 cancellation date, or by June 29, 2018.

149. Therefore, Plaintiff was entitled to a 10% penalty of $350.00 if the refund came on or after June 30, 2018, as well as a second $350.00 penalty on or after July 30, 2018.

150. Since Plaintiff's account was credited $3,500.00 on July 31, 2018, Plaintiff was entitled to two $350.00 penalties, or $700.00.

151. Plaintiff and others similarly situated have submitted cancellation requests that did not result in them or their lienholders receiving the entire refund amounts due under NESNA's contracts and the CSCA.

## SIXTH COUNT
### Violations of the Consumer Fraud Act for Class B and a Portion of Class D as to NESNA

152. Plaintiff on behalf of herself and others similarly situated repeats and realleges all prior allegations as if set forth at length herein.

153. The Consumer Fraud Act, at N.J.S.A. 56:8-2, prohibits the use of "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise."

154. NESNA is subject to the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 *et seq.*

155. NESNA's transactions with Plaintiff and others similarly situated are sales subject to the CFA.

156. The aforementioned failures of NESNA to provide refunds of the entire amounts due under the terms of the service contracts sold to Plaintiff and others similarly situated violations of the CFA.

157. As a result of the failure of NESNA to refund the entire amounts due under the terms of the service contracts sold, Plaintiff and others similarly situated have suffered an ascertainable loss.

158. As a result of the failure of NESNA to refund the entire amounts due under the terms of the service contracts sold, Plaintiff and others similarly situated have suffered an ascertainable loss equal to the amount of the underpayment

159. For her transaction with NESNA, Plaintiff has suffered an ascertainable loss of $700.00, the two penalties that NESNA failed to pay her.

## SEVENTH COUNT
### Violations of the Consumer Service Contract Act for Class B and a Portion of Class D as to NSD

160. Plaintiff on behalf of herself and others similarly situated repeats and realleges all prior allegations as if set forth at length herein.

161. The TWPP Contract is a "motor vehicle ancillary protection product" and a "service contract" as defined by the CSCA at N.J.S.A. 56:12-87.

162. The TWPP Contract is one of many different "service contracts" sold to Plaintiff and others similarly situated through motor vehicle dealers located in New Jersey.

163. Plaintiff and others similarly situated are "contract holders" as defined by the CSCA at N.J.S.A. 56:12-87.

164. NSD is the person who is contractually obligated to Plaintiff under the terms of the TWPP Contract, and is therefore the "provider" as defined by the CSCA at N.J.S.A. 56:12-87.

165. NSD is subject to the CSCA.

166. Pursuant to the cancellation provision of the TWPP Contract, because Plaintiff canceled the contract within 30 days of purchase, she was entitled to a full refund or credit of the $1,000.00 purchase price within 45 days of the May 15, 2018 cancellation date, or by June 29, 2018.

167. Plaintiff and others similarly situated have submitted cancellation requests that did not result in them or their lienholders receiving the entire refund amounts due under NSD's contracts and the CSCA.

## EIGHTH COUNT
### Violations of the Consumer Fraud Act for Class B and a Portion of Class D as to NSD

168. Plaintiff on behalf of herself and others similarly situated repeats and realleges all prior allegations as if set forth at length herein.

169. NSD is subject to the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 *et seq.*

170. NSD's transactions with Plaintiff and others similarly situated are sales subject to the CFA.

171. The aforementioned failures of NSD to provide refunds of the entire amounts due under the terms of the service contracts sold to Plaintiff and others similarly situated constitute violations of the CFA.

172. As a result of the failure of NSD to refund the entire amounts due under the terms of the service contracts sold, Plaintiff and others similarly situated have suffered an ascertainable loss.

173. As a result of the failure of NSD to refund the entire amounts due under the terms of the service contracts sold, Plaintiff and others similarly situated have suffered an ascertainable loss equal to the amount of the underpayment.

174. For her transaction with NSD, Plaintiff has suffered an ascertainable loss of $1,000.00, plus a $100.00 per month penalty pursuant to the CSCA.

**WHEREFORE**, Plaintiff, on behalf of herself and those similarly situated, respectfully prays for relief as follows:

a.  For an order certifying this matter as a class action pursuant Fed. R. Civ. P. 23(b)(3) as to Class A and Class B, providing notice to the members of the Classes, and appointing Plaintiff as the Class Representative and Plaintiff's attorneys as Class Counsel.

b.  For an order certifying this matter as a class action pursuant Fed. R. Civ. P. 23(b)(2) as to Class C and Class D, appointing Plaintiff as the Class Representative and Plaintiff's attorneys as Class Counsel.For injunctive relief prohibiting NESNA and NSD from future violations of the CSCA and the CFA;

c.  For injunctive relief prohibiting NP Nissan from future violations of the MVAP Regulations, the CFA and the TCCWNA;

d.  For a declaratory judgment that NESNA and NSD violated the CSCA and the CFA;

e.  For a declaratory judgment that NP Nissan violated the TILA, the CFA, and the TCCWNA;

f.  As to Class C and Class D, as an injunctive remedy, requiring each Defendant to provide Notice to all members of the respective classes of the liability findings as to Plaintiff and informing them that if the same thing happened to them they may bring a separate action to recover damages,

g.  For actual damages as to Class A and Class B.

h.  For treble damages, pursuant to the CFA as to Class A and Class B.

i.  For a refund of all monies collected via an unlawful act pursuant to N.J.S.A. 56:8-2.11 as to Class A and Class B.

j.  For maximum statutory damages pursuant to the TILA and the TCCWNA as to Class A and Class B.

k.  For reasonable attorney's fees and costs pursuant to the TILA, the CFA, the TCCWNA, and all other applicable statutes.

l.  For pre-judgment and post-judgment interest.

m.  For such other and further relief as the Court deems equitable and just.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of the Complaint will be mailed to the Attorney General of the State of New Jersey within ten days after the filing with the Court, pursuant to N.J.S.A. 56:8-20.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Andrew R. Wolf, Esq., David C. Ricci, Esq., and Christopher J. McGinn, Esq. are hereby designated as trial counsel for the Plaintiff in the above matter.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE

Pursuant to L. Civ. R.11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party, other than putative class members, other than putative class members, who should be joined in the action at this time

**The Wolf Law Firm, LLC**

*s/Andrew R. Wolf*
Andrew R. Wolf

**Law Office of David C. Ricci, LLC**

*s/David Ricci*
David C. Ricci

**Law Office of Christopher J. McGinn**

*s/Christopher J. McGinn*
Christopher J. McGinn
*Attorneys for Plaintiff and the putative class*

Dated: April 26, 2019

# Exhibit A



STOCK                           T25442
VIN              JTDKN3DU4F0463681

Internet Price          **$16,898**

UNLOCK YOUR IMMEDIATE
ADDITIONAL SAVINGS
► CLICK HERE NOW ◄

👥  24 people recently viewed this vehicle*

| SAVE ♡ | ASK ? |


Vehicle


Payment


Print



JERSEY'S NISSAN DEALER
North Plainfield NISSAN

🔍 Search    📞 Contact

You Are Here: Home > Used > **Used 2015 Toyota Prius**

# Pre-Owned 2015 Toyota Prius Two FWD 5D Hatchback

**Why Buy from Us?**

JERSEY'S NISSAN DEALER
North Plainfield NISSAN
www.JerseysNissan.com

➜ The North Plainfield Advantage
➜ Free Car Washes
➜ Free Loaner Cars
➜ $100 Referral Program










 Ready to Trade In or Sell Your Car?
Get a **Kelley Blue Book** Instant Cash Offer in minutes.
 GET MY OFFER

## Basic Info

| | |
|---|---|
| **Body:** | 5D Hatchback |
| **Mileage:** | 14,448 |
| **HWY:** † | 48 MPG |
| **City:** † | 51 MPG |
| **Exterior:** | White |
| **Interior:** | Dark Gray |
| **Engine:** | 1.8L 4-Cylinder DOHC 16V VVT-i |
| **Trans:** | CVT |

## Description

New Price! 1.8L 4-Cylinder DOHC 16V VVT-i. Super White 2015 Toyota Prius Two 5D Hatchback FWD CVT 1.8L 4-Cylinder DOHC 16V VVT-i

ALWAYS THE RIGHT PRICE AT NORTH

☰  🅝 **NorthPlainfield**
        NISSAN

📍  📞

🔍 Search          📞 Contact

Power door mirrors

Spoiler

All Weather Floor Mats & All Weather
Cargo Mat

Driver door bin

Driver vanity mirror

Front reading lights

Illuminated entry

Outside temperature display

Overhead console

Passenger vanity mirror

Rear seat center armrest

Telescoping steering wheel

# Exhibit B

# North Plainfield Nissan

Motor Vehicle
Retail Order

www.jerseynissan.com
545 Route 22 W.   NORTH PLAINFIELD, NJ 07060
Tel (908) 755-6400   Fax (908) 755-3285

☐ New   ☒ Used
☐ Demo   ☐ Lease

HOW DID YOU HEAR ABOUT THIS DEALERSHIP: _____

NO VERBAL COMMITMENTS WERE MADE TO ME OTHER THAN WHAT WAS WRITTEN ON THE ORDER. OK✓

DEAL NO. 93702
STOCK NO. T25442

CUSTOMER RACHAEL A PAGE
ADDRESS redacted   POUND RIDGE NY 10576
DATE 04/28/18   SALES PERSON NAEEM SHEIKH
E-MAIL redacted

HOME PHONE redacted   WORK PHONE redacted   CELL # _____

D. L. # redacted   SOC. SEC. # _____   D.O.B. redacted

YEAR & MAKE 2015 TOYOTA   MODEL PRIUS

BODY TYPE 5DR HB TWO COLOR SUPER WHIT MILES 14448   SERIAL NO.

| J | T | D | K | N | 3 | D | U | 4 | F | 0 | 4 | 6 | 3 | 6 | 8 | 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

INTERIOR TRIM COLOR TWO

INS. CO. PROGRESSIVE   POLICY # 921329493
AGENT DIRECT   AGENCY
PHONE (800)776-4737   FAX

Prior to Delivery of the vehicle listed above, customer shall elect one of the following and so advise dealership:
*  Cash Purchase        *  Finance Purchase        *  Lease
IF A CREDIT SALE, REQUIRED INFORMATION CONTAINED ON A SEPARATE DISCLOSURE STATEMENT IS MADE A PART OF THIS ORDER.
IF A LEASE, COMPLETE DISCLOSURE OF ALL LEASE TERMS AND CONDITIONS IS CONTAINED ON A SEPARATE LEASE CONTRACT.
TO BE DELIVERED ON OR ABOUT 04/28/2018

| | |
|---|---|
| Price of Unit | 17573.76 |
| Additional Equipment (options) | |
| TIRE AND WHEEL | 1000.00 |
| | |
| SERVICE CONTRACT | 3500.00 |
| | |
| | XXXXXX |
| | |
| | |
| | |

**IF A NEW VEHICLE SALE OR LEASE . . .**
The only warranties applying to this vehicle are those offered by the manufacturer. Dealer sells/leases this vehicle "as is" and hereby disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. Any liability of dealer with respect to defects or malfunctions of this vehicle including, without limitation, those which pertain to performance or safety, (whether by way of "strict liability," based upon dealer's negligence, or otherwise), is expressly excluded and customer hereby assumes any such risks. The manufacturer's warranty is not affected by this disclaimer of warranties by dealer.

**IF USED VEHICLE SALE OR LEASE-CHECK APPROPRIATE BOX**
☐ This vehicle is sold/leased "as is" and dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. Any liability of dealer with respect to defects or malfunctions of this vehicle including, without limitation, those which pertain to performance or safety, (whether by way of "strict liability," based upon dealer's negligence, or otherwise), is expressly excluded and customer hereby assumes any such risks.

**OR**

☐ The only warranty on this vehicle is the limited warranty which is issued with and made a part of this order form.

**ALL USED VEHICLE SALES-DEALER'S OBLIGATION**
The laws of New Jersey require Motor Vehicle Dealers to make all necessary repairs, without charge, or return the full purchase price (if a sale) to the customer in the event a used vehicle sold and intended to be registered in this State fails to meet State Inspection Standards for the issuance of a certificate of approval due to a defect that is not the result of the customer's own act. The undersigned, before entering into this contract, has been informed of dealer's obligation above and agrees to have the used vehicle inspected within 14 days from the issuance of the permanent registration for such vehicle.

_____ Date     X_____ Customer's Signature

**WAIVER OF DEALER'S OBLIGATION (USED VEHICLE SALE)**
The undersigned, has read and understood the above Dealer's Obligation, and does hereby WAIVE AND RELEASE the DEALER'S OBLIGATION to make repairs without charge or return the full purchase price if the vehicle fails to meet State Inspection Standards for the issuance of a certificate of approval, unless the cause for the vehicle's rejection is an item which is "covered" by New Jersey's Used Car Lemon/Warranty Law (P.L. 1995, Chpt. 373).

_____ Date     X_____ Customer's Signature

**IF A LEASE, THE FOLLOWING APPLY:**

MONTHLY PAYMENT_____
MILEAGE PER YEAR_____
TERM_____
DOWN PAYMENT_____
*Subject To Primary Lender's Rate & Approval.

**IF A PURCHASE, THE FOLLOWING APPLY:**

| | | |
|---|---|---|
| **TOTAL PRICE OF VEHICLE** | 22073 | 76 |
| Less Trade-in | | N/A |
| Documentary Fee:   Clerical Fee  $361.97   Document Delivery Fee  $137.00 (See Paragraph 16 On Reverse Side) | $498.97 | |
| **TOTAL TAXABLE AMOUNT** | 22572 | 73 |
| State Sales Tax | 1627 | 94 |
| Motor Vehicle Tire Fee - $1.50 per New Tire | | N/A |
| N.J. Supplemental Titling Fee | | N/A |
| I authorize No. Plainfield Nissan to process my credit information solely for the intent of purchasing and/or leasing a vehicle. | | |
| Registration/Title Fee (Estimated) (See Paragraph 15 On Reverse Side) | 400 | 00 |
| NET PAY-OFF ON TRADE-IN | | N/A |
| | | N/A |
| **TOTAL** | 24600 | 67 |
| Deposit (minimum 10% required) | 10000 | 00 |

**TRADE-IN DESCRIPTION AND ALLOWANCE**

Year_____ Make_____ Model_____
Serial No. |_|_|_|_|_|_|_|_|_|_|_|_|_|_|_|_|_| Mileage_____
Trade-in Value _____ N/A _____ Date of _____
Less Balance Owed _____ N/A
Net Trade-in Allowance _____ N/A
Balance Owed to: _____
Address: _____
Account No.: _____
Info. From _____ Good Thru _____
Customer certifies that the frame on the used vehicle has never sustained any damage or been repaired. All airbags are of original equipment and have

BALANCE IN CASH, CERTIFIED CHECK OR OTHER ACCEPTABLE FORM OF PAYMENT

...or negligence, or otherwise), is expressly excluded and customer hereby assumes any such risks.

☐ The only dealer warranty on this vehicle is the limited warranty which is issued with and made a part of this order form.

| IF A LEASE, THE FOLLOWING APPLY: | |
| --- | --- |
| MONTHLY PAYMENT | |
| MILEAGE PER YEAR | |
| TERM | |
| DOWN PAYMENT | |
| *Subject To Primary Lender's Rate & Approval. | |

| IF A PURCHASE, THE FOLLOWING APPLY: | | |
| --- | --- | --- |
| TOTAL PRICE OF VEHICLE | 22073 | 76 |
| Less Trade-in | | N/A |
| Documentary Fee:   Clerical Fee  $361.97   Document Delivery Fee  $137.00  (See Paragraph 16 On Reverse Side) | $498.97 | |
| TOTAL TAXABLE AMOUNT | 22572 | 73 |
| State Sales Tax | 1627 | 94 |
| Motor Vehicle Tire Fee - $1.50 per New Tire | | N/A |
| N.J. Supplemental Titling Fee | | N/A |
| I authorize No. Plainfield Nissan to process my credit information solely for the intent of purchasing and/or leasing a vehicle. | | |
| Registration/Title Fee (Estimated)  (See Paragraph 15 On Reverse Side) | 400 | 00 |
| NET PAY-OFF ON TRADE-IN | | N/A |
| | | N/A |
| TOTAL | 24600 | 67 |
| Deposit (minimum 10% required) | 10000 | 00 |
| BALANCE IN CASH, CERTIFIED CHECK OR OTHER ACCEPTABLE FORM OF PAYMENT TO BE PAID TO DEALER ON DELIVERY | | |
| BALANCE DUE ON DELIVERY➤ | 14600 | 67 |
| All Rebates And Incentives Are Assigned to Dealer | | XX |

### ALL USED VEHICLE SALES-DEALER'S OBLIGATION

The laws of New Jersey require Motor Vehicle Dealers to make all necessary repairs, without charge, or return the full purchase price (if a sale) to the customer in the event a used vehicle sold and intended to be registered in this State fails to meet State Inspection Standards for the issuance of a certificate of approval due to a defect that is not the result of the customer's own act. The undersigned, before entering into this contract, has been informed of dealer's obligation above and agrees to have the used vehicle inspected within 14 days from the issuance of the permanent registration for such vehicle.

___ / ___ / ___          X _____
Date                         Customer's Signature

### WAIVER OF DEALER'S OBLIGATION (USED VEHICLE SALE)

The undersigned, has read and understood the above Dealer's Obligation, and does hereby WAIVE AND RELEASE the DEALER'S OBLIGATION to make repairs without charge or return the full purchase price if the vehicle fails to meet State Inspection Standards for the issuance of a certificate of approval, unless the cause for the vehicle's rejection is an item which is "covered" by New Jersey's Used Car Lemon/Warranty Law (P.L. 1995, Chpt. 373).

___ / ___ / ___          X _____
Date                         Customer's Signature

### TRADE-IN DESCRIPTION AND ALLOWANCE

Year _____ Make _____ Model _____
Serial No. |_|_|_|_|_|_|_|_|_|_|_|_|_|_|_|_|_| Mileage _____
Trade-in Value ___N/A___ Date of ___
Less Balance Owed ___N/A___
Net Trade-in Allowance ___N/A___
Balance Owed to: _____
Address: _____
Account No.: _____
Info. From _____ Good Thru _____

Customer certifies that the frame on the trade-in vehicle has never sustained any damage or been repaired. All airbags are of original equipment and have never been deployed. Also, that the vehicle has never been in a flood or had the emission control system tampered with or altered. Customer certifies the above mileage of trade-in vehicle is accurate.

X _____          ___ / ___ / ___
Customer's Signature          Date

## AGREEMENT TO ARBITRATE ALL CLAIMS. READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY, IT LIMITS YOUR RIGHTS, AND WAIVES THE RIGHT TO MAINTAIN A COURT ACTION, OR TO PURSUE A CLASS ACTION IN COURT AND IN ARBITRATION.

The parties to this agreement agree to arbitrate all claims, disputes, or controversies, including all statutory claims and any state or federal claims ("claims"), that may arise out of or relating to this agreement and the sale or lease identified in this agreement. **By agreeing to arbitrate, the parties understand and agree that they are giving up their rights to use other available resolution processes, such as a court action or administrative proceeding, to resolve their disputes.** Further, the parties understand that they may not pursue any claim, even in arbitration, on behalf of a class or to consolidate their claim with those of other persons or entities. Consumer Fraud, Used Car Lemon Law, and Truth-in-Lending claims are just three examples of the various types of statutory claims subject to arbitration under this agreement. The arbitration shall be administered by the American Arbitration Association under its Commercial Arbitration Rules, and the Consumer Related Disputes Supplementary Procedures to the extent applicable, before a single arbitrator who shall be a retired judge or an attorney. Dealership shall advance both party's filing, service, administration, arbitrator, hearing, and other fees, subject to reimbursement by decision of the arbitrator. Each party shall bear his or her own attorney, expert, and other fees and costs, except when awarded by the arbitrator under applicable law. The arbitration shall take place in New Jersey at a mutually convenient place agreed upon by the parties or selected by the arbitrator. The decision of the arbitrator shall be binding upon the parties. Any further relief sought by either party will be subject to the decision of the arbitrator. [If any part of this agreement, other than the waivers of class actions, and consolidation, is found to be unenforceable for any reason, the remaining provisions shall remain enforceable. If the waiver of class actions or consolidation is found unenforceable, this entire agreement shall be void.] In the event that any claims are based on a lease, finance, or other agreement between the parties related to this sale or lease as well as this agreement, and if such lease, finance or other agreement contains a provision for arbitration of claims which conflicts with or is inconsistent with this arbitration provision, the terms of such other arbitration provision shall govern and control. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT. THIS ARBITRATION PROVISION LIMITS YOUR RIGHTS, AND WAIVES THE RIGHT TO MAINTAIN A COURT ACTION OR PURSUE A CLASS ACTION IN COURT OR IN ARBITRATION. PLEASE READ IT CAREFULLY, PRIOR TO SIGNING.

Accepted By: 04/28/18 X _____     ___ Date          X _____
                Date   Dealer or His Authorized Representative   04/28/18          Customer's Signature
                                                                 Date

                                                                 X _____
                                                                 Customer's Signature

Customer agrees that this Order on the face and on the reverse side and any attachments to it includes all the terms and conditions, if a sale. Customer further agrees this Order cancels and supersedes any prior agreements and as of the date signed by Dealer or authorized agent, comprises the complete and exclusive statement of the terms of the agreement between Customer and Dealer. If Customer, prior to delivery, elects to lease the vehicle described above, Customer and Dealer agree to execute a lease contract which shall contain full disclosure of all lease information. THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE. Customer by execution of this Order acknowledges that they have read the terms and conditions and have received a true copy of the order. I am 18 years of age or older and of full legal capacity to enter this contract.

Accepted By: 04/28/18 X _____     ___ Date          X _____
                Date   Dealer or His Authorized Representative   04/28/18          Customer's Signature
                                                                 Date

## THIS ORDER NOT SUBJECT TO CANCELLATION — DEPOSIT NON-REFUNDABLE
**IMPORTANT: READ THE TERMS AND CONDITIONS ON THE BACK OF THIS ORDER BEFORE SIGNING**

## ADDITIONAL TERMS AND CONDITIONS

1. **DEFINITIONS.** "Selling Dealer" and "Dealer" mean the authorized Dealer to whom this Order is addressed, and who shall become a party on its acceptance. "Customer" means the party executing this Order as such on the face hereof. "Manufacturer" means the Division or Corporation that manufactured the vehicle or chassis, it being understood by Customer that Dealer is in no respect the agent of Manufacturer.

2. **RELATIONSHIP OF PARTIES TO AGREEMENT.** Dealer and Customer are the sole parties to this order. Any reference to Manufacturer is for the purpose of generally explaining certain contractual relationships existing between the Dealer and Manufacturer with respect to the new motor vehicles.

3. **MANUFACTURER'S PRICE INCREASES.** The Manufacturer has reserved the right to change the price to Dealer of new motor vehicles without notice. In the event the price to Dealer of the new motor vehicle ordered by Customer is changed by Manufacturer prior to its delivery to Customer, Dealer reserves the right to change the cash delivery price to Customer. If the cash delivery price, or monthly lease payment, in the event Customer has advised Dealer of his election to lease, is increased by Dealer, Customer may, if dissatisfied with the higher figure, cancel this Order. In the event a used motor vehicle ("trade-in") has been traded as part of the consideration for the new motor vehicle, the trade-in shall be returned to Customer upon payment of a reasonable charge for storage and repairs (if any). If the trade-in has been previously sold by     Dealer, the amount received for it shall be returned to Customer less a selling commission of 15% and any expense incurred in storing, insuring, conditioning or advertising said trade-in for sale.

4. **TRADE-IN AND APPRAISAL.** Where Customer wishes to trade in a used motor vehicle ("trade-in") as part of the consideration for the motor vehicle ordered, Dealer may appraise the trade-in at the time of the execution of this Order by Customer. Dealer also reserves the right to reappraise the trade-in at the time of delivery.

   The Dealer shall not alter a trade-in appraisal from the time of the initial appraisal until the time of delivery unless:

   (1) intervening factors indicate an apparent decrease in the value of the trade-in over and above ordinary wear and tear; and/or

   (2) a change occurs in the mechanical performance of the vehicle.

   If such reappraised value is lower than the original allowance as shown on the front of this Order, Customer may, if dissatisfied, cancel this Order. Such right of cancellation must be exercised prior to actual delivery to the Customer of the motor vehicle ordered and the surrender of the used motor vehicle to Dealer.

   Customer certifies that the engine block is not cracked, the vehicle has not been flooded, there is no significant vehicle defect or damage, the vehicle has not been involved in any accident, and the emission control equipment, including catalytic converter has never been altered or removed.

5. **DELIVERY OF TITLE TO DEALER.** Customer agrees to deliver to Dealer satisfactory evidence of title to any trade-in vehicle used as part of this consideration for the motor vehicle ordered at the time of delivery of such used motor vehicle to Dealer. Customer warrants any trade-in vehicle to be his property free and clear of all liens and encumbrances except as otherwise noted on this Order.

6. **NON-REFUNDABLE DEPOSIT.** Unless this Order is cancelled by Customer in accordance with Paragraph 3 and 4 above, Dealer shall have the right upon failure or refusal of Customer to accept delivery of the ordered vehicle or to comply with the terms of this Order, to retain as liquidated damages any cash deposit. In addition, where Customer has traded a used motor vehicle as part of the consideration for the vehicle ordered, Dealer shall have the right to sell such trade-in and reimburse himself out of the proceeds of such sale for the expenses specified in Paragraphs 3 and 4 above and for such other expenses and losses as Dealer may incur or suffer as a result of the Customer's failure or refusal to comply with the provisions of this Order.

7. **DESIGN CHANGES BY THE MANUFACTURER.** The Manufacturer has reserved the right to change the design of any new motor vehicle, chassis, accessories or parts of new vehicles at any time without notice and without obligation to make the same or any similar change upon any motor vehicle, chassis, accessories or parts of vehicles previously purchased by or shipped to Dealer or being manufactured or sold in accordance with the Dealer's orders. In the event of any such change by the Manufacturer, Dealer shall have no obligation to Customer to make this same or any similar change in any motor vehicle, chassis, accessories or parts of the vehicle covered by this Order either before or after delivery to Customer.

8. **DELAYS IN DELIVERY.** Dealer shall not be liable for failure to deliver or for any delay in delivering the motor vehicle covered by this Order where such failure or delay is due, in whole or in part, to any cause beyond the control or without the fault or negligence of Dealer.

9. **PAYMENT OF SALES AND USE TAXES.** The price for the motor vehicle specified on the face of this Order includes reimbursement for certain Federal Excise taxes but does not include sales taxes and use taxes (Federal, State or Local) or other taxes, unless expressly stated. Customer agrees to pay all applicable sales, use, or occupational taxes. In the event Dealer fails to collect or miscalculates an applicable tax, Customer agrees to pay any additional amount due upon notification by Dealer.

10. **EXECUTION OF OTHER DOCUMENTS.** The Customer, before or at the time of delivery of the motor vehicle covered by this Order will execute such other forms of agreement or documents as may be required by the terms and conditions of payment in accordance with Customer's election to purchase for cash, purchase and finance or to lease the vehicle covered by this Order.

11. **PAYMENT OF BALANCE DUE AND ACCEPTANCE BY CUSTOMER.** The Customer agrees to advise Dealer of his election to purchase for cash, purchase and finance or to lease the vehicle covered by this Order and to pay the balance due on the terms specified and to accept delivery of the ordered vehicle within 48 hours after notification that the vehicle is ready for delivery. In the event Customer fails to take delivery of the vehicle, Customer's deposit may be retained by Dealer as liquidated damages for Dealer's expense and efforts in the matter. In addition, Dealer may dispose of or sell ordered vehicle as Dealer deems reasonable.

12. **SALES OF DEMONSTRATORS AND USED VEHICLES ONLY:** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provision in the contract of sale.

13. **PROHIBITION ON EXPORTING NEW VEHICLES:** The Customer agrees that the new vehicle to be purchased or leased will be used only in, and will not be exported from, the USA within one year of delivery of the vehicle to Customer. Customer accepts full responsibility, for any violation of this provision, and shall be liable for all costs and any charge backs, other costs or economic sanctions imposed on Dealer by Dealer's Manufacturer such as product withholding, directly or indirectly. This provision applies to the use and export of vehicle from any place and to any recipient, with or without the knowledge of Customer. Customer consents to the jurisdiction of the Superior Court of NJ in the event that Dealer litigates to enforce

7. **DESIGN CHANGES BY THE MANUFACTURER.** The Manufacturer has reserved the right to change the design of any new motor vehicle, chassis, accessories or parts of new vehicles at any time without notice and without obligation to make the same or any similar change upon any motor vehicle, chassis, accessories or parts of vehicles previously purchased by or shipped to Dealer or being manufactured or sold in accordance with the Dealer's orders. In the event of any such change by the Manufacturer, Dealer shall have no obligation to Customer to make this same or any similar change in any motor vehicle, chassis, accessories or parts of the vehicle covered by this Order either before or after delivery to Customer.

8. **DELAYS IN DELIVERY.** Dealer shall not be liable for failure to deliver or for any delay in delivering the motor vehicle covered by this Order where such failure or delay is due, in whole or in part, to any cause beyond the control or without the fault or negligence of Dealer.

9. **PAYMENT OF SALES AND USE TAXES.** The price for the motor vehicle specified on the face of this Order includes reimbursement for certain Federal Excise taxes but does not include sales taxes and use taxes (Federal, State or Local) or other taxes, unless expressly stated. Customer agrees to pay all applicable sales, use, or occupational taxes. In the event Dealer fails to collect or miscalculates an applicable tax, Customer agrees to pay any additional amount due upon notification by Dealer.

10. **EXECUTION OF OTHER DOCUMENTS.** The Customer, before or at the time of delivery of the motor vehicle covered by this Order will execute such other forms of agreement or documents as may be required by the terms and conditions of payment in accordance with Customer's election to purchase for cash, purchase and finance or to lease the vehicle covered by this Order.

11. **PAYMENT OF BALANCE DUE AND ACCEPTANCE BY CUSTOMER.** The Customer agrees to advise Dealer of his election to purchase for cash, purchase and finance or to lease the vehicle covered by this Order and to pay the balance due on the terms specified and to accept delivery of the ordered vehicle within 48 hours after notification that the vehicle is ready for delivery. In the event Customer fails to take delivery of the vehicle, Customer's deposit may be retained by Dealer as liquidated damages for Dealer's expense and efforts in the matter. In addition, Dealer may dispose of or sell ordered vehicle as Dealer deems reasonable.

12. **SALES OF DEMONSTRATORS AND USED VEHICLES ONLY:** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provision in the contract of sale.

13. **PROHIBITION ON EXPORTING NEW VEHICLES:** The Customer agrees that the new vehicle to be purchased or leased will be used only in, and will not be exported from, the USA within one year of delivery of the vehicle to Customer. Customer accepts full responsibility, for any violation of this provision, and shall be liable for all costs and any charge backs, other costs or economic sanctions imposed on Dealer by Dealer's Manufacturer such as product withholding, directly or indirectly. This provision applies to the use and export of vehicle from any place and to any recipient, with or without the knowledge of Customer. Customer consents to the jurisdiction of the Superior Court of NJ in the event that Dealer litigates to enforce this provision.

14. **ASSIGNMENT OF ORDER PROHIBITED:** Customer and Dealer agree that this Order cannot be assigned to any third party, without the written consent of both Customer and Dealer.

15. **TITLE AND REGISTRATION FEES:** These are fees charged by the State of New Jersey for the title, and registration for your vehicle, any additional paperwork necessary to process your title and registration, and where applicable, for transferring the title of your trade-in. These fees may be estimated. In the event the actual fees charged by the State are different, Dealer will refund any overcharge to the Customer in the ordinary course of business. In the event of an undercharge, Customer agrees to pay any underestimate to Dealer.

16. **DOCUMENTARY FEE:** Is a fee charged by the dealer in an amount that covers costs and reflects the value of the benefit provided by the service. In some cases, the fee includes some services that may be optional or may be performed by the Customer.

17. **GOVERNING LAW.** This Agreement shall be construed under and in accordance with the laws of the State of New Jersey without regard to conflict of law principles.

ROFNJ BACK (4/15)

## RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

Dealer Number _____ Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| RACHAEL A. PAGE 31 MAJOR TALLMADGE LN POUND RIDGE NY 10576 WESTCHESTER | N/A | NORTH PLAINFIELD NISSAN 545 RT 22 W NORTH PLAINFIELD NJ 07060-3724 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| USED | 2015 | TOYOTA PRIUS | JTDKN3DU4F0463681 | Personal, family, or household unless otherwise indicated below ☐ business  ☐ agricultural  ☒ N/A |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $10000.00 is |
|---|---|---|---|---|
| 4.90 % | $ 1925.13 | $ 14600.67 | $ 16525.80 | $ 26525.80 |

### Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | 275.43 | Monthly beginning 06/12/2018 |
| N/A | N/A | N/A |

Or As Follows: N/A

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of __5__ % of the part of the payment that is late. If the vehicle is primarily for personal, family, or household use and the cash price is $ __10,000__ or less, the charge for each late payment will be $ __10__.

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1 Cash Price (including $ 1627.94 sales tax) | $ 20201.70 | (1) |
| 2 Total Downpayment = | | |
| Trade-In | | |
| (Year)        (Make)        (Model) | | |
| Gross Trade-In Allowance | $ N/A | |
| Less Pay Off Made By Seller | $ N/A | |
| Equals Net Trade In | $ N/A | |
| + Cash | $ 10000.00 | |
| + Other N/A | $ N/A | |
| (If total downpayment is negative, enter "0" and see 4J below) | $ 10000.00 | (2) |
| 3 Unpaid Balance of Cash Price (1 minus 2) | $ 10201.70 | (3) |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts): | | |
| A Cost of Optional Credit Insurance Paid to Insurance Company or Companies. | | |
| Life | $ N/A | |
| Disability | $ N/A | $ N/A |
| B Other Optional Insurance Paid to Insurance Company or Companies | | $ N/A |
| C Official Fees Paid to Government Agencies | | |
| N/A | N/A | $ N/A |
| N/A | N/A | $ N/A |
| N/A | N/A | $ N/A |
| D Optional Gap Contract | | $ N/A |
| E Supplemental Title Fee | | $ N/A |
| F Vehicle Tire Fee | | $ N/A |
| G Government Taxes Not Included in Cash Price | | $ N/A |
| H Government License and/or Registration Fees N/A | | $ N/A |
| I Government Certificate of Title Fees | | $ 400.00 |
| J Other Charges (Seller must identify who is paid and describe purpose) | | |
| N/A | for Prior Credit or Lease Balance | $ N/A |
| NORTH PLAINFIELD | DOC FEE | $ 498.97 |
| NISSAN SECURITY P | QUALITY GUARD SUP | $ 3500.00 |
| N/A | N/A | $ N/A |
| N/A | N/A | $ N/A |

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit. **THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE, YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:

### Optional Credit Insurance

☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability:  ☐ Buyer  ☐ Co-Buyer  ☐ Both

Premium:
Credit Life $ __N/A__
Credit Disability $ __N/A__
Insurance Company Name N/A
N/A
Home Office Address N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance pays the unpaid part of the amount financed if you die. This insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance pays the scheduled payments due under this contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life or credit disability insurance provides. See the policies or certificates for coverage limits and other terms and conditions. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance

☐ N/A _____ N/A
     Type of Insurance        Term
Premium $ __N/A__
Insurance Company Name N/A
N/A
Home Office Address N/A

☐ N/A _____ N/A
     Type of Insurance        Term
Premium $ N/A
Insurance Company Name N/A
N/A
Home Office Address N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X N/A _____ N/A
Buyer Signature                        Date

X N/A _____ N/A

**4** Other Charges Including Amounts Paid to Others on Your Behalf

| | | | |
|---|---|---|---|
| **A** | Cost of Optional Credit Insurance Paid to Insurance Company or Companies. | | |
| | Life. | $ | N/A |
| | Disability | $ | N/A |
| **B** | Other Optional Insurance Paid to Insurance Company or Companies | $ | N/A |
| **C** | Official Fees Paid to Government Agencies | | |
| | N/A    N/A | $ | N/A |
| | N/A    N/A | $ | N/A |
| | N/A    N/A | $ | N/A |
| **D** | Optional Gap Contract | $ | N/A |
| **E** | Supplemental Title Fee | $ | N/A |
| **F** | Vehicle Tire Fee | $ | N/A |
| **G** | Government Taxes Not Included in Cash Price | $ | N/A |
| **H** | Government License and/or Registration Fees N/A | $ | N/A |
| **I** | Government Certificate of Title Fees | $ | 400.00 |
| **J** | Other Charges (Seller must identify who is paid and describe purpose) | | |
| | N/A                     for Prior Credit or Lease Balance | $ | N/A |
| | NORTH PLAINFIELD    DOC FEE | $ | 498.97 |
| | NISSAN SECURITY P  QUALITY GUARD SUP | $ | 3500.00 |
| | N/A                     for N/A | $ | N/A |
| | N/A                     for N/A | $ | N/A |
| | N/A                     for N/A | $ | N/A |
| | N/A                     for N/A | $ | N/A |
| | N/A                     for N/A | $ | N/A |
| | N/A                     for N/A | $ | N/A |

Total Other Charges and Amounts Paid to Others on Your Behalf  $ 4398.97 (4)

**5** Amount Financed (3 + 4)  $ 14600.67 (5)

---

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before
N/A _____ N/A _____ SELLER'S INITIALS _____
          Year

---

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business or agricultural use.
If a payment is not received in full within N/A days after it is due, you will pay a late charge of $ _____ or _____% of the part of the payment that is late, whichever is less.
If this box is not checked, the late charge in the "Federal Truth-In-Lending Disclosures" still applies.

---

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.
N/A
Term _____ Mos. N/A _____ Name of Gap Contract

I want to buy a gap contract.
Buyer Signs X N/A

---

## Other Optional Insurance

| | | | |
|---|---|---|---|
| ☐ N/A | | N/A | |
| Type of Insurance | | | Term |
| Premium $ | | N/A | |
| Insurance Company Name N/A | | | |
| N/A | | | |
| Home Office Address N/A | | | |
| ☐ N/A | | N/A | |
| Type of Insurance | | | Term |
| Premium $ N/A | | | |
| Insurance Company Name N/A | | | |
| Home Office Address N/A | | | |

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X N/A _____ N/A
Buyer Signature                              Date

X N/A _____ N/A
Co-Buyer Signature                         Date

---

**Returned Check Charge:** You agree to pay a charge of $ 20 if any check you give us is dishonored and the law allows it.

---

## NO COOLING OFF PERIOD
**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X _____   Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
**See back for other important agreements.**

## NOTICE TO RETAIL BUYER
**Do not sign this contract in blank.**
**You are entitled to a copy of the contract at the time you sign.**
**Keep it to protect your legal rights.**

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs X _____ Date 04/28/18   Co-Buyer Signs X N/A _____ Date

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X N/A
Seller Signs _____ Date 04/28/18   By X _____ Title _____

---

Seller assigns its interest in this contract to WELLS FARGO DEALER SERVICES (Assignee) under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse    XX ☐ Assigned without recourse    ☐ Assigned with limited recourse

Seller NORTH PLAINFIELD NISSAN
By _____   Title _____

**ILAW** FORM NO. 553-NJ (REV. 4/14) Patent No. 3,460,782
©2014 The Reynolds and Reynolds Company   TO ORDER: www.reysource.com 1-800-344-0996; fax 1-800-531-9055
THE PRINTER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM; CONSULT YOUR OWN LEGAL COUNSEL.

CUSTOMER/TRUTH IN LENDING COPY

## 1. FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**c. How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

## 2. YOUR OTHER PROMISES TO US

**a. If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b. Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c. Security Interest.**
You give us a security interest in:
• The vehicle and all parts or goods put on it;
• All money or goods received (proceeds) for the vehicle;
• All insurance, maintenance, service, or other contracts we finance for you; and
• All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. Insurance that you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest to the extent permitted by applicable law. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.
If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

If you pay late, we may also take the steps described below.

**b. You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
• You do not pay any payment on time;
• You give false, incomplete, or misleading information on a credit application;
• You start a proceeding in bankruptcy or one is started against you or your property; or
• You break any agreements in this contract.
The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c. You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fee and court costs the law permits. If the vehicle is primarily for personal, family, or household use and the cash price is $10,000 or less, the maximum attorney's fee you will pay will be $100 plus 10% of the excess over $500 of the amount due when we hire the attorney.

**d. We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

**e. How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

**f. We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

**g. What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle as the law allows. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4. WARRANTIES SELLER DISCLAIMS

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

## 5.

**Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el**

**d. Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest to the extent permitted by applicable law. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge computed at the Annual Percentage Rate shown on the front of this contract or, at our option, the highest rate the law permits.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e. What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
**a.** You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle as the law allows. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. WARRANTIES SELLER DISCLAIMS**
**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**5. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

**6. Servicing and Collection Contacts.**
You agree that we may try to contact you in writing, by e-mail, or by using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**7. Applicable Law**
Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**
The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Form No. 553-NJ 4/14

# Exhibit C

# QualityGuard+Plus®

## VEHICLE SERVICE CONTRACT (VSC)

### APPLICATION/DECLARATION

**PRODUCT TYPE** ☒ QG

| DEALER NUMBER | Nissan Extended Services North America P.O. Box 685004 Franklin, TN 37068-5004 | VEHICLE INFORMATION | | |
|---|---|---|---|---|
| 5564 | | **VEHICLE YEAR** | **MAKE** | **MODEL** |
| **DEALER INFORMATION** | | 2015 | TOYOTA | Prius Technology Package |
| **DEALER NAME** | | | | |
| NORTH PLAINFIELD NISSAN 3711/5564 | **CONTRACT NUMBER** | **VEHICLE ID NUMBER (17-DIGIT VIN)** | | |
| **CITY** PLAINFIELD   **STATE** NJ | Q  D   VSC11345616 | JTDKN3DU4F0463681 | | |

### OPTIONAL COMPONENT COVERAGE

| | VEHICLE PRICE |
|---|---|
| ☐NONE  T) ☐TURBOCHARGER   S) ☐SUPERCHARGER   F) ☐AWD/4WD   D) ☐DIESEL | $ 17,573.76 |

| APPLICANT INFORMATION | LIENHOLDER OR SERVICE PAYMENT PLAN (0% FINANCING) |
|---|---|
| **LAST NAME** PAGE   **FIRST** RACHAEL   **M.I.** | **NAME** WELLS FARGO DEALER SERVICES |
| redacted | **STREET / P.O. BOX ADDRESS** PO BOX 997517 |
| **CITY** POUND RIDGE   **STATE** NY   **ZIP CODE** 10576 | **CITY** SACRAMENTO   **STATE** CA   **ZIP CODE** 95899-7517 |
| **A.M. PHONE** ( redacted )   **P.M. PHONE** ( ) | **APPLICANT EMAIL** |

| VSC TYPE | CURRENT ODOMETER READING | EFFECTIVE DATE | | |
|---|---|---|---|---|
| | | **MONTH** | **DAY** | **YEAR** |
| Q) ☐ POWERTRAIN | 14,448 | | 4/28/2018 | |
| R) ☐ DELUXE | | Effective 12:01 A.M. Standard Time at Address of Applicant | | |
| S) ☒ SUPREME | **EXPIRATION MILEAGE** | **EXPIRATION DATE** | | |
| | | **MONTH** | **DAY** | **YEAR** |
| | 89,448 | | 4/28/2023 | |

| DEDUCTIBLE** | VSC PURCHASE PRICE* | DATE YOU PURCHASED VEHICLE‡ | | |
|---|---|---|---|---|
| 1) ☐ $50   2) ☒ $100 | $ 3,500.00 | **MONTH** | **DAY** 4/28/2018 | **YEAR** |
| ** Per visit. | *Subject to state and local taxes, where applicable. | ‡Standard VSC Start Date for contracts sold at the time of vehicle sale. Effective 12:01 A.M. Standard Time at Address of Applicant | | |

### TIME & MILEAGE TERMS

Available terms are based on a combination of model year eligibility and vehicle odometer reading at time of purchase. Model year eligibility is limited to the current model year plus the previous nine (9) model years. Coverage begins on date of purchase, and expires at the number of months or miles after purchase as selected below, whichever occurs first.

| Eligibility: 0-6,000 miles | Eligibility: 6,001-20,000 miles | Eligibility: 20,001-30,000 miles | Eligibility: 30,001-40,000 miles |
|---|---|---|---|
| ☐ 12 months/12,000 miles | ☐ 12 months/12,000 miles | ☐ 12 months/12,000 miles | ☐ 12 months/12,000 miles |
| ☐ 24 months/24,000 miles | ☐ 24 months/24,000 miles | ☐ 24 months/24,000 miles | ☐ 24 months/24,000 miles |
| ☐ 36 months/36,000 miles | ☐ 36 months/36,000 miles | ☐ 36 months/36,000 miles | ☐ 36 months/36,000 miles |
| ☐ 36 months/48,000 miles | ☐ 36 months/48,000 miles | ☐ 36 months/48,000 miles | ☐ 36 months/48,000 miles |
| ☐ 48 months/60,000 miles | ☐ 48 months/48,000 miles | ☐ 48 months/48,000 miles | ☐ 48 months/48,000 miles |
| ☐ 48 months/60,000 miles | ☐ 48 months/60,000 miles | ☐ 48 months/60,000 miles | ☐ 48 months/60,000 miles |
| ☐ 60 months/60,000 miles | ☐ 60 months/60,000 miles | ☐ 60 months/60,000 miles | ☐ 60 months/60,000 miles |
| ☐ 60 months/75,000 miles | ☒ 60 months/75,000 miles | ☐ 60 months/75,000 miles | ☐ 60 months/75,000 miles |
| ☐ 60 months/100,000 miles | ☐ 60 months/100,000 miles | ☐ 60 months/75,000 miles | ☐ 60 months/75,000 miles |
| ☐ 72 months/75,000 miles | ☐ 72 months/75,000 miles | ☐ 72 months/100,000 miles | ☐ 60 months/100,000 miles |
| ☐ 72 months/100,000 miles | ☐ 72 months/100,000 miles | ☐ 72 months/75,000 miles | ☐ 72 months/75,000 miles |
| ☐ 84 months/100,000 miles | ☐ 84 months/100,000 miles | ☐ 72 months/100,000 miles | ☐ 84 months/70,000 miles |
| ☐ 84 months/70,000 miles | ☐ 84 months/100,000 miles | ☐ 84 months/70,000 miles | |
| ☐ 84 months/120,000 miles | ☐ 96 months/100,000 miles | ☐ 84 months/100,000 miles | |
| ☐ 96 months/100,000 miles | | ☐ 96 months/100,000 miles | |

| Eligibility: 40,001-50,000 miles | Eligibility: 50,001-60,000 miles | Eligibility: 60,001-75,000 miles | Eligibility: 75,001-100,000 miles |
|---|---|---|---|
| ☐ 12 months/12,000 miles | ☐ 12 months/12,000 miles | ☐ 12 months/12,000 miles | ☐ 12 months/12,000 miles |
| ☐ 24 months/24,000 miles | ☐ 24 months/24,000 miles | ☐ 24 months/24,000 miles | ☐ 24 months/24,000 miles |
| ☐ 36 months/36,000 miles | ☐ 36 months/36,000 miles | ☐ 36 months/38,000 miles | ☐ 36 months/36,000 miles |
| ☐ 36 months/48,000 miles | ☐ 36 months/48,000 miles | ☐ 36 months/48,000 miles | |
| ☐ 48 months/48,000 miles | ☐ 48 months/48,000 miles | ☐ 48 months/48,000 miles | **Eligibility: New or CPO Hyundai/Kia Only** |
| ☐ 48 months/60,000 miles | ☐ 48 months/60,000 miles | ☐ 60 months/60,000 miles | ☐ 10 years/100,000 miles |
| ☐ 60 months/60,000 miles | ☐ 60 months/60,000 miles | ☐ 60 months/60,000 miles | |
| ☐ 72 months/75,000 miles | ☐ 72 months/75,000 miles | ☐ 72 months/75,000 miles | |
| ☐ 84 months/70,000 miles | ☐ 84 months/70,000 miles | ☐ 84 months/70,000 miles | |

### CUSTOMER ACKNOWLEDGEMENT

I understand that optional component coverage for 4WD/AWD, turbocharger, supercharger, or diesel applies only if selected above. Coverage begins on the VSC sale date, although any or all components or parts may be covered by the manufacturer's limited warranty, warranty extensions, recalls or campaigns. Expiration of coverage is determined by the greater of time or mileage, whichever occurs first. Nissan Extended Services North America (NESNA) reserves the right to accept, correct, modify, or refuse any VSC Application/ Declaration. Claims within the first 90 days and/or 3,000 miles of the effective date are subject to review and/or denial for a pre-existing condition. NESNA reserves the right to reject any Application/Declaration for any reason at its discretion upon return of the full amount paid.

☐ **WA Residents:** By initialing this box, YOU acknowledge that YOU have received the attached VSC which contains information on material conditions that YOU must meet to maintain coverage, including, but not limited to: the maintenance schedule to which YOU must adhere; the requirement to document repair and maintenance work; the procedures for filing claims; the work and parts covered by the VSC; the time and mileage limitations; the exclusions of coverage; the right to return the VSC for a full refund; the implied warranty of merchantability of the motor vehicle is not waived if the VSC has been purchased within ninety (90) days of the purchase date of the motor vehicle from a provider who also sold the motor vehicle covered by the VSC. QualityGuard+Plus is administered by Nissan Extended Services North America, GP.

A deductible applies per visit for repairs to components covered under the VSC. Purchase of the VSC is not required in order to purchase or obtain financing for a motor vehicle. **I agree that maintenance of the above-described vehicle, in accordance with factory standards, is a condition precedent to coverage under this VSC.**

| X _____ APPLICANT'S SIGNATURE | 4/28/2018 DATE | X _____ AUTHORIZED DEALER'S SIGNATURE | 4/28/2018 DATE |
|---|---|---|---|

NFS-QGP-12-1  (1-15)

CUSTOMER

0815  7.5M

# QualityGuard+Plus*                    VEHICLE SERVICE CONTRACT (VSC)

You are advised that there are various state and federal laws that protect your interests as a consumer. In the event of a problem that cannot be resolved with NESNA, you may have other rights and remedies available to you.

*THIS VEHICLE SERVICE CONTRACT ("VSC") IS DESIGNED SOLELY TO AFFORD THE PURCHASER WITH REASONABLE REPAIR OR REPLACEMENT OF THE LISTED PARTS TO THE DESCRIBED VEHICLE. IT IS NOT A CONDITION OF THE SALE OR FINANCING OF THE VEHICLE.*

*NESNA RESERVES THE RIGHT TO ACCEPT, CORRECT, MODIFY, OR REFUSE ANY VSC APPLICATION. CLAIMS WITHIN THE FIRST 90 DAYS AND/OR 3,000 MILES OF THE EFFECTIVE DATE ARE SUBJECT TO REVIEW AND/OR DENIAL FOR A PRE-EXISTING CONDITION. NESNA RESERVES THE RIGHT TO REJECT ANY APPLICATION OR VSC FOR ANY REASON AT ITS DISCRETION, UPON RETURN OF THE FULL AMOUNT PAID.*

## 1  HOW THIS VSC PROTECTS YOU

In return for your payment, NESNA* will arrange for payment of the cost to repair or replace all covered parts of the described vehicle when such repair or replacement is due to a "MECHANICAL BREAKDOWN," as defined below, and when all other terms and conditions of this VSC are met. The deductible which you must pay is listed in the Application/Declaration.

MECHANICAL BREAKDOWN means the inability of a covered part(s) to perform the function(s) for which it was designed, due solely to defects in materials or faulty workmanship. MECHANICAL BREAKDOWN does not include damage due to negligence, damage caused by an accident, or the gradual reduction in operating performance due to wear and tear. In addition, this VSC does not provide any benefit for any mechanical failure/breakdown caused by a non-covered part, or to a non-covered part.

*Nissan Extended Services North America, GP, P.O. Box 685004, Franklin, TN 37068-5004, Tel. 615-725-1000.

## 2  WHAT IS COVERED AND FOR HOW LONG

**This QualityGuard+Plus VSC covers the cost of repairs and the replacement of covered parts due to a MECHANICAL BREAKDOWN.** Replacement of any part may be made with a part of like kind and quality (LKQ).

**MECHANICAL BREAKDOWN coverage begins when your New Vehicle Limited Warranty, if any, expires. Other coverage, such as towing, begins on the date listed on this VSC. Therefore, this VSC may cover you for a portion of the same period as the original New Vehicle Limited Warranty provided with your vehicle when new. The New Vehicle Limited Warranty is the warranty provided by the original manufacturer of your vehicle. MECHANICAL BREAKDOWN and towing coverage continues until the expiration of this VSC. Refer to the Application/Declaration for details relating to the expiration of this VSC.**

**Odometer reading, which appears in the Application/Declaration, means the actual number of miles which the vehicle has been operated since manufacture as indicated on the vehicle's odometer, unless the odometer is/has been broken, has been replaced or has been tampered with. In such a situation, NESNA will calculate the total actual number of miles of vehicle operation since manufacture based on the information available. If ever the odometer is tampered with, and/or is inoperative so that the vehicle's total actual number of miles of operation since manufacture cannot be accurately determined by NESNA, this VSC will be void.**

SUPREME PLAN ONLY: **covers any repairs needed due to MECHANICAL BREAKDOWN, as defined above, for all parts and components of your vehicle except for those items described in Section 5.**

**AUDIO AND NAVIGATION SYSTEM COVERAGE IS LIMITED TO: REPAIR OF EXISTING COMPONENT OR EXCHANGE (WITH A REPAIRED OR REMANUFACTURED COMPONENT) OR REPLACEMENT WITH A LIKE KIND AND QUALITY (LKQ) COMPONENT. COMPONENT REPLACEMENTS ARE LIMITED TO ONE OCCURRENCE. IF REPAIR OR EXCHANGE OR LKQ COMPONENT IS NOT AVAILABLE, OUR MAXIMUM LIABILITY UNDER THIS VSC WILL BE THE COST OF AN LKQ COMPONENT. REPLACEMENT WITH A NEW ORIGINAL EQUIPMENT MANUFACTURER (OEM) COMPONENT IS NOT OFFERED. COVERAGE IS PROVIDED FOR THE FOLLOWING OEM COMPONENTS:**
• **Factory installed** chassis modules including: radio, amplifier, audio cassette player, multi-CD player.
• **Factory installed** navigation display unit and navigation module.

DELUXE PLAN ONLY: **covers any repairs needed due to MECHANICAL BREAKDOWN, as defined above, for components in the categories below; only those specific parts listed are covered:**

**ENGINE:**

Cylinder block, cylinder head, timing cover, valve cover, and oil pan are only covered if damaged by the failure of an internal engine component. The following parts are covered: pistons, piston rings, connecting rods and bearings, crankshaft and main bearings, camshaft and camshaft bearings, cam followers, variable timing solenoid and switch, timing gears, tensioners, idlers, timing/balance chain or belt, intake and exhaust valves, valve springs, valve guides, valve spring retainers, valve spring dampers, rocker arms, rocker arm shafts, push rods, lifters, harmonic balancer (crankshaft pulley), manifolds and collector(s), oil pump, oil pump housing, engine oil cooler, oil sending unit, flywheel/flex plate, ring gear, engine mounts, seals and gaskets.

**TURBOCHARGER AND SUPERCHARGER:***

WITH THE PURCHASE OF OPTIONAL COMPONENT COVERAGE ONLY, THE FOLLOWING FACTORY INSTALLED ORIGINAL EQUIPMENT MANUFACTURER PARTS ARE COVERED: all internal components, intercooler, turbocharger or supercharger valves and actuators. Note: turbocharger or supercharger housings are only covered if damaged by the failure of a turbocharger or supercharger internal part.

**ROTARY ENGINE:***

THE FOLLOWING PARTS ARE COVERED: rotor, bearings, apex seal and eccentric shaft. Note: rotary engine housing is covered only if damaged by the failure of an internal rotary engine part.

**DIESEL ENGINE:***

WITH THE PURCHASE OF OPTIONAL COMPONENT COVERAGE ONLY, THE FOLLOWING PARTS ARE COVERED: vacuum pump and glow plug controller/relay.

**LUBRICATION AND COOLING:**

Water pump, fan and clutch, fan coupling, serpentine belt tensioner and idler, fan motor, radiator, oil pump case, and seals and gaskets.

**FUEL SYSTEM:**

Multi-port fuel injection system including sensors, injectors, pressure regulator, idle air control valve, IMRC Motors, knock sensor, control units, fuel pump and sending unit, fuel tank, metal fuel lines, seals and gaskets.

**TRANSMISSION: (AUTOMATIC AND MANUAL)**

All internal components. The following parts are also covered: torque converter, electronic control units, oil cooler, transmission mounts, seals and gaskets. Note: transmission case housing, and oil pan are only covered if damaged by the failure of an internal transmission part.

### FRONT WHEEL DRIVE:

All internal components. The following parts are also covered: constant velocity joints (slide joint spider assemblies), seals and gaskets. Note: final drive/transaxle case housing, and oil pan are only covered if damaged by the failure of an internal front wheel drive part.

### REAR WHEEL DRIVE:

All internal components. The following parts are also covered: ring and pinion, limited slip assembly, spider gears, all internal bearings, axle shafts, propeller shaft(s), universal joints (journal assemblies), center support bearings, companion flanges, seals and gaskets. Note: differential housing is only covered if damaged by the failure on an internal rear wheel drive part.

### ALL WHEEL DRIVE/FOUR WHEEL DRIVE (AWD/4WD):**

WITH THE PURCHASE OF OPTIONAL COMPONENT COVERAGE ONLY, THE FOLLOWING PARTS ARE COVERED: all internal transfer case components, locking hubs, four-wheel drive actuator/motor, and constant velocity joints (spider assemblies). Note: transfer case housing is only covered if damaged by the failure of an internal AWD/4WD part.

### FRONT AND REAR SUSPENSION:

MacPherson struts, upper and lower control arms (links/transverse links) and bushings, tension/compression rods and bushings, stabilizer bars and bushings, rear arm assembly, torsion bars, upper and lower ball joints, wheel bearings and seals, knuckle spindle, hubs, coil and leaf springs, and rear axle beam.

### STEERING:

Steering gear/rack and pinion internal components. The following are also covered: power steering pump and reservoir, steering column main and upper shafts, steering linkages and couplings, tilt wheel mechanism/actuator, power cylinder assembly, seals and gaskets. Note: steering gear and rack and pinion housings are only covered if damaged by the failure of a steering internal part.

### BRAKES:

Master cylinder, vacuum assist booster, hydro-booster, wheel cylinders, brake calipers, hydraulic valves, lines and fittings, anti-lock braking system, seals and gaskets.

### ELECTRICAL:

Starter motor and solenoid, alternator, voltage regulator, ignition coil(s), distributor, ignition switch and module, horn, manually and mechanically operated switches, relays, electronic instrument cluster, electronic driver information display and module (head up display unit), drive computer display, H.I.D ballast, front and rear wiper motors and washers, power window motors and regulators, power door lock actuators, power seat motors, sunroof motor, convertible top motor, power mirror motors and actuators, automatic speed control, OEM anti-theft/keyless entry modules, ignition module, and engine control module (ECM/PCM).

### FRONT AND REAR AIR CONDITIONING (OEM ONLY):

Compressor, clutch and pulley, condenser, evaporator, receiver dryer, seals and valves, evaporator thermistor, temperature control programmer, a/c blower motor resistor (relay), blower motor, condenser fan motor, and heater core.

**POWERTRAIN PLAN ONLY** covers any repairs needed due to **MECHANICAL BREAKDOWN**, as defined above, for components in the categories below; only those specific parts listed are covered:

### ENGINE:

Cylinder block, cylinder head, timing cover, valve cover and oil pan are only covered if damaged by the failure of an internal engine component. The following parts are also covered: pistons, piston rings, connecting rods and rod bearings, crankshaft and main bearing, camshaft and camshaft bearings, cam followers, variable timing solenoid and switch, timing gears, timing/balance chain or belt, tensioners, idlers, intake and exhaust valves, valve springs, valve guides, valve spring retainers, valve spring dampers, rocker arms, rocker arm shafts, push rods, lifters, harmonic balancer (crankshaft pulley), manifolds and collector(s), fuel pump, oil pump, oil pump housing, engine oil cooler, flywheel/flex plate, ring gear, engine mounts, seals and gaskets.

### TURBOCHARGER AND SUPERCHARGER:**

WITH THE PURCHASE OF OPTIONAL COMPONENT COVERAGE ONLY, THE FOLLOWING FACTORY INSTALLED ORIGINAL EQUIPMENT MANUFACTURER PARTS ARE COVERED: all internal components, intercooler, turbocharger or supercharger valves and actuators. Note: turbocharger or supercharger housings are only covered if damaged by the failure of an internal turbocharger or supercharger part.

### ROTARY ENGINE:**

THE FOLLOWING PARTS ARE COVERED: rotor, bearings, apex seal and eccentric shaft. Note: rotary engine housing is covered only if damaged by the failure of an internal rotary engine part.

### DIESEL ENGINE:**

WITH THE PURCHASE OF OPTIONAL COMPONENT COVERAGE ONLY, THE FOLLOWING PARTS ARE COVERED: vacuum pump and glow plug controller/relay.

### LUBRICATION AND COOLING:

Water pump, fan and clutch, fan coupling, serpentine belt tensioner and idler, fan motor, radiator, oil pump case, and seals and gaskets.

### TRANSMISSION: (AUTOMATIC AND MANUAL)

All internal components. The following parts are also covered: torque converter, electronic control units, oil cooler, transmission mounts, seals and gaskets. Note: transmission case housing, and oil pan are only covered if damaged by the failure of an internal transmission part.

### FRONT WHEEL DRIVE:

All internal components. The following parts are also covered: constant velocity joints (slide joint spider assemblies), seals and gaskets. Note: final drive/ transaxle case housing and oil pan are only covered if damaged by the failure of an internal front wheel drive part.

### REAR WHEEL DRIVE:

All internal components. The following parts are also covered: ring and pinion, limited slip assembly, spider gears, all internal bearings, axle shafts, propeller shaft(s), universal joints (journal assemblies), center support bearings, companion flanges, seals and gaskets. Note: differential housing is only covered if damaged by the failure on an internal rear wheel drive part.

### ALL WHEEL DRIVE/FOUR WHEEL DRIVE (AWD/4WD):**

WITH THE PURCHASE OF OPTIONAL COMPONENT COVERAGE ONLY, THE FOLLOWING PARTS ARE COVERED: internal transfer case components. The following parts are also covered: locking hubs, four-wheel drive actuator/motor, and constant velocity joints (spider assemblies). Note: transfer case housing is only covered if damaged by the failure of an internal AWD/4WD part.

**\*\*TURBOCHARGER, SUPERCHARGER, DIESEL ENGINE, AND ALL-WHEEL DRIVE/FOUR-WHEEL DRIVE (AWD/4WD) ARE COVERED ONLY IF THE APPLICABLE OPTION WAS SELECTED ON THE QUALITYGUARD APPLICATION/ DECLARATION AT TIME OF PURCHASE AND THE REQUIRED ADDITIONAL FEE PAID.**

**SEALS AND GASKETS ARE COVERED COMPONENTS FOR LEAKAGE FAILURES AS THEY RELATE TO ANY REPAIRS NEEDED DUE TO MECHANICAL BREAKDOWN, AS DEFINED ABOVE. HOWEVER, SEEPAGE IS NOT COVERED AND CANNOT BE CLAIMED UNDER THIS VSC. LEAKAGE IS DEFINED AS AN ACTIVELY DRIPPING SEAL/GASKET; SEEPAGE IS DEFINED AS A WET SEAL/GASKET.**

**ALL PLANS:**

**DEDUCTIBLE:**

Repairs for components covered under this VSC are subject to the per visit deductible listed in the Application/ Declaration.

**ADDITIONAL BENEFITS:**

**CAR RENTAL REIMBURSEMENT:**

If you require alternate transportation due to the **MECHANICAL BREAKDOWN** of a covered part, this VSC will provide reimbursement for the actual expenses of substitute transportation up to $35 per day, to a maximum of five (5) days, and $175 per breakdown, once you have an authorized repair. Rental must be made from an authorized rental agency or your repair facility. Reimbursement for substitute transportation under this VSC is based solely on the repair time required to repair the vehicle. This VSC does not provide for NESNA to assist with additional rental due to weekends, holidays, parts on back order, or shop delays. NESNA approves rental according to the following table:

| Repair Time Required | Number of Days Allowed | Maximum Reimbursement |
|---|---|---|
| 0.1 - 8.0 Hours | 2 | up to $70 |
| 8.1 - 16.0 Hours | 3 | up to $105 |
| 16.1 - 24.0 Hours | 4 | up to $140 |
| 24.1 - 32.0 Hours | 5 | up to $175 |

**TOWING ASSISTANCE**

If your vehicle requires towing due to the MECHANICAL BREAKDOWN of a covered part, this VSC will provide reimbursement for the actual expense of towing it to an authorized repair facility. Such reimbursement shall not exceed $100 per mechanical breakdown. If you are entitled to receive towing benefits or coverage from any other source whatsoever (including, but not limited to, the vehicle's warranty, an insurance policy, auto club membership, or other VSC), this QualityGuard+Plus provides excess coverage only, i.e., NESNA will pay only for the portion (up to $100) of the towing charge not covered from the other source(s). No deductible will apply for this benefit.

**EMERGENCY ROADSIDE ASSISTANCE\* BENEFITS**

Your QualityGuard+Plus VSC includes a Roadside Assistance Program.

- **ROADSIDE ASSISTANCE COVERAGE**

Upon receiving your call, a Roadside Assistance administrator will dispatch a qualified service facility to provide assistance up to a maximum of $100 per incident for: battery boost (jump-start); flat tire change (with your good spare); out-of-gas delivery (maximum $5); lock-out assistance, or towing. No deductible will apply for this benefit.

- **TRIP INTERRUPTION BENEFITS**

Emergency travel/trip interruption coverage is provided should any COVERED MECHANICAL BREAKDOWN occur while you are 100 miles or more away from home. Benefits may apply to the occurrence of the following expenses: alternate transportation, meals and lodging. This VSC will provide coverage for trip interruption, not to exceed $500 per covered incident. No deductible will apply for this benefit.

**FOR 24-HOUR ROADSIDE ASSISTANCE CALL 1-800-225-2476**

\*Services provided through Cross County Motor Club, Inc., Medford, MA 02155, except in AK, CA, HI, OR, WI and WY, where services are provided through Cross Country Motor Club of California, Inc., Medford, MA 02155.

**MANUFACTURER'S WARRANTY DEDUCTIBLE REIMBURSEMENT:**

If any part covered under this VSC is replaced under a Manufacturer's Warranty, you will be reimbursed for a portion of the required deductible charged to you by the Manufacturer, less the QualityGuard+Plus deductible.

**NOTE: Due to the requirements of the laws of certain states, some of the above coverages, such as towing, may be unavailable in your state. Please refer to the endorsements on this VSC for any exceptions to coverage mandated by state law or state regulatory authority.**

**3  WHAT TO DO IN CASE OF A MECHANICAL BREAKDOWN OF A COVERED PART**

**It is your duty to protect the vehicle against any further damage; also:**

3.1  Return the vehicle to the selling dealer if possible, or a licensed repair facility.

3.2  Provide the repairing dealer with this VSC and instruct them to contact NESNA at 1-800-888-5245, PRIOR TO REPAIRING, REPLACING OR DISASSEMBLY OF ANY PART(S). NESNA will consider the repairing dealer's diagnosis of your vehicle in order to determine if the MECHANICAL BREAKDOWN is related to a component covered by this QualityGuard+Plus VSC. **IMPORTANT: IT IS YOUR RESPONSIBILITY TO ENSURE THAT AUTHORIZATION HAS BEEN RECEIVED PRIOR TO PROCEEDING WITH ANY AND ALL REPAIRS. IF SUCH AUTHORIZATION IS NOT RECEIVED, YOU MAY BE LIABLE FOR THE EXPENSE (i.e. PAYMENT WILL NOT BE MADE BY NESNA).**

3.3  If applicable, YOU must authorize needed diagnosis/disassembly to determine cause of failure and extent of damage. If it is determined that the cause of failure is not covered by your contract, YOU will be responsible for any and all diagnosis/ disassembly charges.

3.4  Cooperate with the 3rd party inspection of your vehicle; if deemed necessary by NESNA.

3.5  Provide proof of maintenance to the dealer, repair facility, or QualityGuard+Plus, as applicable. Refer to "Maintenance and Records" section below.

3.6  Pay the deductible shown in the Application/Declaration. All other additional costs relating to excluded items will be the responsibility of the holder of this VSC.

3.7  Mailing address is NESNA, QualityGuard+Plus Claims, P.O. Box 685009 (P-3-B), Franklin, TN 37068-5009.

3.8  Documents requesting reimbursement must be received by NESNA within ONE YEAR of fail date; if not, your claim will be denied.

TO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER, AUTO WARRANTY COMPANY, OR SERVICE CONTRACT COMPANY, OR ANY OTHER PERSON, OR FILE A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING FALSE, INCOMPLETE, OR MISLEADING INFORMATION MAY BE A CRIME UNDER APPLICABLE LAW.

**4    MAINTENANCE AND RECORDS**

You are responsible for properly using, maintaining and caring for your vehicle as per the vehicle manufacturer's recommendations. Evidence of the performance of the required maintenance must be kept and presented as proof of such maintenance in connection with related repairs covered by this VSC. FAILURE TO PROVIDE SUCH EVIDENCE, OR FAILURE TO PROPERLY MAINTAIN THE VEHICLE IN ACCORDANCE WITH YOUR OWNER'S MANUAL, MAY DISQUALIFY YOU FROM COVERAGE.

**5    WHAT IS NOT COVERED**

5.1  ANY REPAIR NOT AUTHORIZED BY NESNA PRIOR TO THE REPAIR BEING PERFORMED.

5.2  **Any and all electric or hybrid vehicle systems/components are not eligible for coverage, including but not limited to, high voltage (HV) components (including batteries & cells), hybrid transmission, powertrain control systems: inverters, converters, motors, generators, battery charger(s), HV PCU's & PCM's; and regenerative braking systems.**

5.3  **Any components not listed in the "WHAT IS COVERED AND FOR HOW LONG" section of this VSC, including but not limited to:** Paint, bumpers, body sheet metal and panels, frame and structural parts, moldings and trim, fuses, weatherstripping, carpet, upholstery, seat frames, glass, heated glass element. Any and all antenna(s), including but not limited to, in-glass, cellular, GPS , immobilizer key and remote keyless entry switch assembly. Freeze plugs, and constant velocity boots. Squeaks and rattles, water leaks, wind noise. Engine and accessory drive belts. Hoses including but not limited to: heater/cooling system, vacuum, air conditioning, and power steering. Clutch disc, pressure plate, pilot bearing (bushing) and throw-out bearing. All exhaust system components. Vinyl/ convertible top, retractable soft/hard tops, removable hard top and all assemblies, including but not limited to: hardware and linkages. Replacement of OEM Audio or Navigation components or systems with new audio or navigation components or systems. Any and all in-vehicle mobile entertainment systems/ video components, game centers in-vehicle communication or voice recognition systems, Bluetooth®, On-Star®, audio speakers, wiring, remotes, CD's, DVD's. Any and all Audio/GPS navigation system discs, including but not limited to, start-up, reprogramming, update software. DVD's, audio/video cassettes or game cartridges. Any and all Non-OEM audio and/or navigation components or systems. Advanced driver assistance systems, including but not limited to: distance sensing/measuring, parking assistance, dynamic speed control. Convenience systems, including but not limited to: quadrasteer, active rollover protection, hydropneumatic suspension, electronic air purification, driver impairment. Safety restraint systems, including but not limited to: air bags/sensors, seat belts. Daytime running light system, swivel headlight system, headlamps/tail lamps assemblies, center high mounted stop lamp assembly and their bulbs/l.e.d's. Battery and cables. Tires, brake drums, disc brake rotors, brake pads, brake linings/shoes, wheels/rims, wheel studs, shock absorbers. Any nuts, bolts, fasteners, rivets are not covered except where required in conjunction with a covered repair.

5.4  **Maintenance service expenses specified in your Owner's Manual such as:** engine tune-up, wheel balance and alignment, spark plug/glow plug and ignition wire replacement/adjustment. Timing belt replacement, fluid and lubricant replacement/ replenishment, wiper blade replacement, headlight aiming, filter replacement. Filters, lubricants, coolants, fluids and refrigerants will be covered only if replacement is required in conjunction with a covered repair.

5.5  **Repair or replacement of any covered part should a MECHANICAL BREAKDOWN not occur or if the wear of a part does not exceed the manufacturer's specifications.**

5.6  **Any repairs relating to loss of performance caused by normal wear and tear unless an actual MECHANICAL BREAKDOWN occurs.**

5.7  **Any failures due to damage resulting from:** accident; collision; road hazard; fire; theft; flood/water damage; freezing; rust and corrosion of any kind regardless of cause; salt in any form or of any chemical composition whatsoever (including, but not limited to: road salt, salt water, and/or salt or salt water in the air), environmental damage to include anything whatsoever external (not part of) the vehicle, including but not limited to whether it is/was airborne, in water, soil, air, dust, or caused by the sun; chemicals; vandalism; riot; explosion; natural disaster; terrorism; or acts of God.

5.8  **Any failures due to:**
  ▪ **Engine overheating: regardless of cause**
  ▪ **Failure to maintain proper fluid, coolant, or lubricant levels**
  ▪ **Use of improper or contaminated fuels, fluids or lubricants**
  ▪ **Lack of normal maintenance as specified by your vehicle manufacturer**
  ▪ **Sludge, sludge build-up, varnish, restricted oil passages, stuck piston rings, engine oil consumption**
  ▪ **Engine detonation**
  ▪ **Engine over-rev or transmission misshift (improper shift)**
  ▪ **Any modifications to the vehicle departing from, or differing from, the manufacturer's original factory specifications for that model and trim level, including but not limited to altering/tampering with any computer, control unit or electronic modules.**
  ▪ **Negligent operation of a vehicle with a failed component(s), or failure to protect your vehicle from further damage when a breakdown has occurred or continued operation with a failed component that may result in further damages**
  ▪ **Pulling a trailer or other vehicle that exceeds the Manufacturer's recommendations or exceeds the maximum Gross Vehicle Weight (GVW) of the vehicle**

5.9  **Any failures caused by racing and/or competitive driving of any sort whatsoever, and/or use on a track or driving on any closed course or operation of the vehicle not in compliance with the vehicle's Owners Manual/Warranty Information Booklet.**

5.10 **Any and all service adjustments, including but not limited to: computer reprogramming.**

5.11 **Diagnostic charges and or disassembly procedures that are not listed or not in conjunction with covered components. Also, if parts amounts and labor times are in excess of current year's nationally recognized labor guides, i.e., Motors®, Mitchell®, or Chilton®.**

5.12 **Any failure resulting from pre-existing conditions which were present at the time of vehicle sale.**

5.13 **Parts/Labor charges for engine flushing, including but not limited to: removal of sludge, sludge build-up, varnish, or other contaminates.**

5.14 Any incidental or consequential damages such as, but not limited to: loss of the use of the vehicle or lost wages or lost business, storage charges, inconvenience or commercial loss, as well as any damage caused by a non-covered part, or to a non-covered part.

5.15 All shop supplies or hazardous waste disposal charges.

5.16 Any vehicle with an inoperative or altered speedometer and/or odometer so that the actual mileage of the vehicle cannot be determined.

5.17 Any vehicle used as an emergency vehicle, tow truck or other commercial uses (such as, but not limited to, snow plow, taxi, limousine, delivery, rental, etc.).

5.18 Any expense that occurs during the original manufacturers New Vehicle Limited Warranties or pursuant to: manufacturers recalls or service campaigns or publicly announced owner notifications, parts warranties, or other VSCs (such as extended drivetrain, major component or full coverage warranties, or a repairer's guarantee/warranty).

5.19 Any coverage afforded by this VSC in which the information provided to NESNA cannot be verified as accurate or is found to be deceptive.

5.20 This VSC, and all coverages described herein, does not apply to any vehicle which has ever been:
- The subject of a "salvage", "voided", or "rescinded" factory warranty or title under any state's law
- Vehicles not sold in the United States or Canada or not originally intended for sale, lease, and/or operation in the United States or Canada by the vehicle's manufacturer
- "Totaled" by a licensed insurance company; that is, been the subject of any insurance company's cash payment of claim in lieu of repairs because of a determination that the cost of repairs exceeded the actual cash value of the vehicle. If this VSC is written on such a vehicle, the full amount of NESNA's liability under this VSC is limited to a refund from NESNA of the amount paid to NESNA for this VSC.

5.21 Liability for any damage to property or injury to or death of any person arising out of the operation, maintenance, or use of the vehicle described in this VSC, whether or not related to the PARTS COVERED by this VSC.

5.22 Seepage around seals. See the "What is Covered and for How Long" section.

NESNA'S MAXIMUM LIABILTY UNDER THIS VSC IS AS FOLLOWS: TOTAL ACCUMULATIVE CLAIMS DURING THE TERM OF THIS VSC SHALL NOT EXCEED THE PRIVATE PARTY VALUE OF THE VEHICLE AS LISTED BY KELLY BLUE BOOK° IMMEDIATELY PRECEDING THE LOSS DUE TO THE MOST CURRENT CLAIM.

NESNA WILL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF USE OF THE VEHICLE, INCONVENIENCE OR COMMERCIAL LOSS.

This VSC provides coverage only with respect to MECHANICAL BREAKDOWNS which occur during the VSC period in the United States (excluding U.S. Territories).

**HYUNDAI/KIA VEHICLES ONLY:** This "Wrap" VSC was specifically designed to wrap around the Hyundai/Kia 10-YEAR/100,000-MILE POWERTRAIN LIMITED WARRANTY. This VSC does not provide for Powertrain component coverage under the Hyundai/Kia 10-YEAR/100,000-MILE POWERTRAIN LIMITED WARRANTY. Coverage applies to original owner only. Second and/or subsequent owners have powertrain component coverage under the 5-Year/60,000-Mile New Vehicle Limited Warranty. Hyundai/Kia Certified Pre-Owned vehicles also include the 10-YEAR/100,000-MILE POWERTRAIN LIMITED WARRANTY. Wraps sold on CPO vehicles can be transferred to second and/or subsequent owners as long as the CPO Powertrain Limited Warranty is still in effect.

### 6   SERVICE CONTRACT/NOT A WARRANTY

THIS VSC IS NOT A WARRANTY, AN EXTENSION OF A NEW VEHICLE WARRANTY, OR AN IMPLIED OR GENERAL WARRANTY AND IT IS NOT A CONDITION OF THE SALE OR FINANCING OF THE VEHICLE. This VSC is a "Service Contract" as defined in federal law. (See 15 USCS SEC. 2301 (8).) BY ENTERING INTO THIS VSC, YOU DO NOT WAIVE ANY APPLICABLE WARRANTIES. Be sure to read this VSC carefully so that you understand the difference in coverage between your Warranties and this VSC. FURTHER, you are advised that there are various state and federal laws that protect your interests as a consumer. In the event of a problem that cannot be resolved with NESNA, you may have other rights and remedies available to you.

### 7   OPTIONS/EXCLUSIONS

These requirements apply to VSCs sold in the following states:

**Alabama:** If the lienholder or NESNA cancels the VSC, the $25 cancel fee may not be deducted.

Transfer: Fee is $25.

Obligations of NESNA under this VSC are backed by the full faith and credit of the provider.

**Arizona:** THERE IS NO COVERAGE UNDER THIS VSC FOR LOSS OR BREAKDOWN OF AN ELECTRIC MOTOR, BATTERY PACK, AND GENERATOR.

Cancel: Fee is $25. CONTRACTS CANNOT BE CANCELLED OR COVERAGE VOIDED FOR THE FOLLOWING REASONS:
1) PRE-EXISTING CONDITIONS; 2) PRIOR USE OR THE ODOMETER HAS BEEN TAMPERED WITH PRIOR TO YOUR PURCHASE OF THE VEHICLE; 3) MISREPRESENTATION BY EITHER THE MOTOR VEHICLE DEALER OR ITS SUBCONTRACTORS; 4) INELIGIBILITY FOR THE PROGRAM INCLUDING GRAY MARKET AND HIGH PERFORMANCE AUTOS.

Transfer: Fee is $25. Your refund will not be reduced by claims cost.

All Consumer complaints are subject to the provisions of A.R.S. 20-1095.04 and 20.1095.09. You may file such complaints directly with the Arizona Department of Insurance Consumer Affairs Division (toll-free number 800-325-2548 or email to consumer@id.state.az.us). Under Section 5, items 5.12 and 5.20 do not apply.

THIS VSC IS EFFECTIVE AS OF THE EFFECTIVE DATE SHOWN ABOVE, AND ITS TIME AND MILEAGE LIMITS BEGIN TO RUN AS OF THIS DATE, EVEN THOUGH ANY COMPONENTS OR PARTS COVERED BY THE MANUFACTURER'S LIMITED WARRANTY ARE NOT COVERED BY THIS VSC UNTIL EXPIRATION OF SUCH WARRANTY.

**California:** Nissan Extended Services North America, GP, P.O. Box 685004 (A-6-G), Franklin, TN 37068-5004, Tel. 615-725-1000, CA VSC License #0E81392. NESNA is the sole obligor under this VSC and is solely responsible for payment of or reimbursement for all covered claims. If any promise made in this VSC has been denied or has not been honored within 60 days after your request, you may contact the California Department of Insurance at 1-800-927-4357. In consideration of the provisions and stipulations of this VSC together with such other provisions, stipulations and agreements as may be added thereto, it is agreed that the lienholder listed in the Application/Declaration shall be provided coverage under such VSC to the extent of its financial interest in the covered vehicle.

Cancel: You or a person authorized by you may cancel this VSC by submitting a written cancellation request which includes the mileage (odometer reading) of the vehicle at the time the cancellation is to be effective, and mailing this information to your selling dealer as listed under the Application/Declaration.

(a) NESNA and/or the Lienholder may cancel this VSC within sixty (60) days under the following conditions:

   (1) Notice of cancellation is mailed to you postmarked before the 61st day after the date the VSC was sold by the selling dealer.

   (2) NESNA and/or the Lienholder provides you with a refund equal to the full purchase price stated in this VSC within thirty (30) days from the date of cancellation. However, if NESNA has paid a claim, or has advised you in writing that it will pay a claim, it may provide a pro rata refund, less the amount of any claims paid prior to cancellation. In addition, a cancellation fee of $25 or 10% of the retail price, whichever is lesser, applies for consumer-initiated cancellations after 60 days for new vehicle plans and 30 days for used vehicle plans, regardless of whether a claim is filed.

   (3) This VSC ceases to be valid no less than five days after the postmark date of the notice.

   (4) The notice states the specific grounds for the cancellation.

(b) NESNA and/or the Lienholder may at any time cancel this VSC if: a) your vehicle is a total loss or repossessed, b) your odometer has been stopped or changed during the term of this VSC, c) the registered vehicle has been used in any manner not covered by this VSC, or d) nonpayment by you, conditioned upon each of the following:

   (1) Notice of cancellation is mailed to you.

   (2) If any refund is owed pursuant to Section 1794.41 of the Civil Code, the refund is paid within 30 days of the date of cancellation.

   (3) This VSC ceases to be valid no less than five days after the postmark date of the notice.

   (4) The notice states the specific grounds for the cancellation.

(c) NESNA and/or the Lienholder may at any time cancel this VSC for material misrepresentation or fraud by you, conditioned upon each of the following:

   (1) Notice of cancellation is mailed to you

   (2) A pro rata refund of the purchase price stated on the VSC is paid within 30 days of the date of cancellation.

   (3) The notice states the specific nature of the misrepresentation.

(d) If NESNA cancels this VSC it is liable for any claim reported to NESNA if the claim is reported prior to the effective date of cancellation and is covered by this VSC. For the purpose of this subdivision, you are deemed to have reported a claim if you have completed the first step required under this VSC for reporting a claim.

(e) If NESNA cancels this VSC pursuant to subdivision (b), (c), or (d) and pays a claim, or has advised you in writing that it will pay a claim, NESNA may provide a pro rata rather than full refund, less the amount of any claims paid prior to cancellation.

<u>Transfer:</u> Fee is $25.

**Colorado:** NESNA is the sole obligor under this VSC and is solely responsible for payment of or reimbursement of all covered claims. The obligations of NESNA under this VSC are guaranteed under a motor vehicle mechanical reimbursement policy underwritten by: American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157.

**Connecticut:** In the event of a dispute regarding the terms of this VSC, Purchaser may file a formal written complaint to State of Connecticut, Insurance Department, P.O. Box 816, Hartford, CT 06142-0816, Attention: Consumer Affairs. The written complaint must contain a description of the dispute, the purchase or lease price of the vehicle, the cost of repair of the vehicle and a copy of the VSC.

Should a VSC expire while a vehicle is at a NESNA authorized repair facility for a covered repair, NESNA will complete the repair [begun prior to the expiration of the service contract (based on the repair order open date).]

**Florida:** QualityGuard+Plus is administered by Nissan Extended Services North America, Inc., License #60128. The retail price charged for this VSC is not regulated by the Florida Office of Insurance Regulation.

<u>Cancel:</u> If this VSC is cancelled within sixty (60) days from the date of purchase, then you will receive a full refund less any claims paid. If this VSC is cancelled after sixty (60) days, then the refund will be calculated as follows: If this VSC is cancelled by NESNA and/or the Lienholder, you will receive one hundred percent (100%) of the paid unearned pro rata premium, less a cancellation fee not to exceed five percent (5%) of the gross premium paid by the VSC holder, and not to exceed $25. If you cancel this VSC, NESNA shall return directly to you not less than ninety percent (90%) of the unearned pro rata premium, less a cancellation fee not to exceed five percent (5%) of the gross premium paid by the VSC holder, and not to exceed $25. NESNA remains responsible for full refunds to you on cancelled VSCs. Your salesperson or agent is responsible for the refund of their unearned pro rata commission.

<u>Transfer:</u> Fee is $40.

**Georgia:** Obligations of NESNA under this VSC are backed by the full faith and credit of the provider.

This VSC shall be non-cancelable by NESNA except for fraud, material misrepresentation or failure to pay the consideration due therefore.

If you cancel this VSC, then NESNA shall refund the excess of the consideration paid for this VSC above the customary short rate for the expired term of the VSC. Your refund will not be reduced by the amount of the claim. Under Section 8 CANCELLATION, the last line in the third paragraph is deleted.

**Idaho:** Obligations of NESNA under this VSC are guaranteed under a VSC reimbursement insurance policy. Should NESNA fail to pay or provide service on any claim within 60 days after proof of loss has been filed, the VSC holder is entitled to make a claim directly to American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157, Tel. (800) 358-8885.

Coverage afforded under this motor VSC is not guaranteed by the Idaho Insurance Guarantee Association.

**Illinois:** The cancellation fee is $50 or 10% of the retail price, whichever is lesser. NESNA is the sole obligor under this VSC and is a) the party responsible for honoring cancellation requests, and b) solely responsible for payment of or reimbursement for all covered claims.

**Indiana:** Obligations of NESNA under this VSC are guaranteed under a VSC reimbursement insurance policy. Should NESNA fail to pay or provide service on any claim within 60 days after proof of loss has been filed, the VSC holder is entitled to make a claim directly to American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157, Tel. (800) 358-8885.

**Iowa:** At the time of purchase of this VSC, the following options for payments are made available to you: 1) Single payment; 2) 0% financing; or 3) Financing through a lienholder.

The obligations of NESNA under this VSC are guaranteed under a motor vehicle mechanical reimbursement policy underwritten by American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157-6596, Tel. (305) 253-2244. If NESNA fails to pay or provide service on a claim within sixty days after proof of loss has been filed, then the VSC holder is entitled to make claim directly against the reimbursement policy.

If the VSC holder cancels and requests a full refund within 20 days and no claims have been filed, then a 10% penalty will be added each month to the refund not paid to the holder within 30 days.

Consumers requesting additional information pertaining to this QualityGuard+Plus VSC may contact the Iowa Insurance Division, Two Ruan Center, 601 Locust Street, 4th Floor, Des Moines, IA 50309-3738, Tel. 515-281-5705.

**Kentucky:** The obligations of NESNA under this VSC are insured under a motor vehicle mechanical reimbursement policy underwritten by American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157. The VSC Purchaser

is entitled to make a direct claim against the insurer in the event the claim is not paid within sixty (60) days after the proof of loss has been submitted to the VSC Administrator.

In consideration of the provisions and stipulations of this VSC, it is agreed that the lienholder identified in the Application/Declaration shall be provided coverage under this VSC to the extent of its financial interest in the covered vehicle.

**Louisiana:** Exclusions: Under provision CANCELLATION the phrases "provided you have not filed a claim" and "if you have filed a claim" are deleted.

**Maine:** Your vehicle is covered under an express dealer warranty for thirty (30) days. The coverage provided under your VSC begins upon the expiration of :

1. The thirty-day dealer express warranty period.

2. The New Vehicle Limited Warranty, if any.

**Maryland:** The VSC Purchaser is entitled to make a direct claim against the insurer in the event the claim is not paid within sixty (60) days after the proof of loss has been submitted to the VSC Administrator.

**Minnesota:** This VSC is administered by Nissan Extended Services North America, which is obligated to perform under this VSC. The obligations of NESNA under this VSC are guaranteed under a motor vehicle mechanical reimbursement policy underwritten by American Reliable Insurance Company, 11222 Quail Roost Drive, Miami, FL 33157.

Section 5 is amended to read: 5.19 Any coverage under this VSC if the information provided by the purchaser of this VSC is later discovered by NESNA to have been either false or clearly misleading in the submission of a claim. In Section 6, add "Statute 325F.662, subd.2, provides for express warranty coverage on used vehicles as follows: (1) if the used motor vehicle has less than 36,000 miles, the warranty must remain in effect for at least sixty (60) days or 2,500 miles, whichever comes first; (2) if the used motor vehicle has 36,000 miles or more but less than 75,000 miles, the warranty must remain in effect for at least thirty (30) days or 1,000 miles, whichever comes first. All coverage provided for your vehicle under this motor VSC shall exclude coverage currently in force under any express warranty providing the same coverage for such vehicle as outlined above."

Section 8 is amended to include the following: NESNA shall mail a written notice to you at your last known address at least fifteen (15) days prior to cancellation.

**Mississippi:** This VSC is administered by Nissan Extended Services North America, who is obligated to perform under this VSC. The obligations of NESNA under this VSC are guaranteed under a motor vehicle mechanical reimbursement policy underwritten by American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157. Section 8 is amended to include the following: NESNA shall mail a written notice to you at your last known address at least fifteen (15) days prior to cancellation.

**Missouri:** QualityGuard+Plus is administered by Nissan Extended Services North America, Inc., P.O. Box 685004 (A-6-G), Franklin, TN 37068-5004, Tel. 615-725-1000.

**Nebraska:** The obligations of NESNA under this VSC are insured by a policy of insurance issued by American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157. Please call 866-306-6694 for instructions.

**New Hampshire:**

1. No cancel or transfer fee will be charged for purchases of VSC.

2. Replacement of any part may be made with a part of like kind and quality.

3. For terms, conditions and exclusions regarding "WHAT IS NOT COVERED" under this VSC, see the appropriate section of the VSC.

4. This VSC covers the specific components set forth therein upon expiration of the manufacturer's warranty.

**New Jersey:** Obligations of NESNA under this VSC are backed by the full faith and credit of the provider.

Cancel: NESNA will pay you a 10% per month penalty, based upon the purchase price of this VSC, if the refund or credit is not completed within 45 days of the cancellation of this VSC. If NESNA cancels this VSC, then we will mail you a written notice at your last known address notifying you of the reason for and effective date of the cancellation. You will receive the cancellation notice at least five days prior to the effective date of the cancellation. You will not receive written notice if the reason for cancellation is non-payment of the provider fee, material misrepresentation or omission, or a substantial breach of the contractual obligations outlined in this VSC.

**New York:** Obligations of NESNA under this VSC are backed by the full faith and credit of the provider. Consumers have the right to return this VSC, pursuant to Sections 7905(n) and 7903(e) of Article 79 of the state Insurance Law. This VSC contains a termination provision requiring the VSC provider to mail written notice to the consumer at least 15 days prior to cancellation by the VSC provider, unless the termination is for nonpayment of the provider fee, material misrepresentation, or substantial breach of duties by the consumer, pursuant to Section 7905(k) of the state Insurance Law.

**North Dakota:** QualityGuard+Plus is administered by Nissan Extended Services North America, Inc., P.O. Box 685004 (A-6-G), Franklin, TN 37068-5004, Tel. 615-725-1000.

**Oregon:** NESNA is the sole obligor under this VSC and is solely responsible for all covered claims. QualityGuard+Plus is administered by Nissan Extended Services North America, Inc., P.O. Box 685004 (A-6-G), Franklin, TN 37068-5004, Tel. 615-725-1000.

**South Carolina:** Obligations of NESNA under this VSC are backed by the full faith and credit of the provider.

Consumers requesting additional information or in the event of a problem that cannot be resolved with NESNA may contact the South Carolina Department of Insurance, Office of Special Services, P.O. Box 100105, Columbia, SC 29202-3105, Tel. 800-768-3467.

**Texas:** Obligations of NESNA under this VSC are backed by the full faith and credit of the provider. Consumers requesting additional information or in the event of a problem that cannot be resolved with NESNA may contact the Texas Department of Licensing and Regulation, P.O. Box 12157, Austin, TX 78711, Tel. (800) 803.9202.

**Utah:** Obligations of NESNA under this VSC are guaranteed under a VSC reimbursement insurance policy. Should NESNA fail to pay or provide service on any claim within 60 days after proof of loss has been filed, the VSC holder is entitled to make a claim directly to American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157, Tel. 800-358-8885.

This VSC is subject to limited regulation by the Utah Insurance Department. To file a complaint, contact the Utah Insurance Department at 801-538-3800.

Coverage afforded under this VSC is not guaranteed by the Property and Casualty Guaranty Association. Under Section 3 "WHAT TO DO IN CASE OF A MECHANICAL BREAKDOWN OF A COVERED PART", insert:

• If emergency repair is required and performed outside of normal business hours, call 800-647-7261 the next business day, or as soon as reasonably possible, to submit a request for reimbursement. Failure to give any notice or file any proof of loss required by the policy within the time specified in the policy does not invalidate a claim made by the insured, if the insured shows that it was not reasonably possible to give the notice or file the proof of loss within the prescribed time and that notice was given or proof of loss filed as soon as reasonably possible. NESNA will determine if the MECHANICAL BREAKDOWN is related to a component covered by this VSC and will reimburse you in accordance with this VSC.

Under Section 8 CANCELLATION, replace "if: a) your vehicle is a total loss or repossessed, or b) your odometer has been stopped or changed during the term of this VSC, or c) the registered vehicle has been used in any manner not covered by this VSC" with "due to material misrepresentation; substantial change in the risk assumed, unless NESNA should reasonably have foreseen the change or contemplated the risk when entering into the VSC; and substantial breaches of contractual duties, conditions, or warranties.

Under Section 8 CANCELLATION, insert third paragraph to read: If your policy is cancelled for any of the reasons stated above except for nonpayment of premium, the cancellation is effective no sooner than 30 days after the delivery or first-class mailing of a written notice to you. If your policy is cancelled due to nonpayment of premium, the cancellation is effective no sooner than 10 days after delivery or first class mailing of a written notice to you.

At the time of purchase of this VSC, the following options for payments are made available to you:

1)   Single payment

2)   0% Financing

3    Financing through a lienholder.

**Washington:** This VSC is not an insurance contract.

Trip interruption: The state of Washington requires that an insurance company underwrite trip interruption benefits, so Cross Country Motor Club has engaged Old Republic Insurance Company. Claims are to be submitted to Cross Country for routine handling, but after sixty (60) days from your filing a proof of loss, you are entitled to also submit a claim directly to Old Republic Insurance Company - Tulsa Branch, 8282 South Memorial Drive, Tulsa, OK 74133, Tel. 918-307-1000.

Definitions:

**Motor vehicle/vehicle** means any vehicle subject to registration under Chapter 46.16 RCW described in the **Application/ Declaration** that is covered under this **VSC.**

**Provider Fee/Single Payment Contract Sales Price** means the consideration paid by the consumer for the **VSC.**

**Reimbursement Insurance Policy** means a policy of insurance issued by American Bankers Insurance Company of Florida issued to **NESNA.**

**VSC** means a **Service Contract/Service Agreement** which You have purchased for the **Motor Vehicle/Vehicle** described in the **Application/Declaration.**

**VSC Holder/You/Your** means the person who is the purchaser or holder of the **VSC** as shown on the Application/Declaration.

**VSC Provider** means NESNA, who is contractually obligated to the **VSC Holder** under the terms of the **VSC.**

Cancel: Fee is $25. You may submit a cancellation request directly to your selling dealer, NESNA, or to the insurer of the reimbursement insurance policy. A ten percent penalty shall be added to any refund that is not paid within thirty days of return receipt of the VSC to the provider. Transfer: Fee is $25. After the first 60 days, NESNA may not cancel the VSC and is fully obligated under the terms of the VSC. The State of Washington is the jurisdiction of any civil action in connection with a motor VSC. The State of Washington commissioner is the VSC provider's attorney to receive service of legal process in any action, suit or proceeding in any court. The implied warranty merchantability on the covered vehicle is not waived if the VSC has been purchased within ninety days of the purchase date of the covered vehicle and through the dealer from whom the vehicle was purchased.

NESNA shall not deny a claim for coverage based upon the VSC holder's failure to properly maintain the vehicle, unless the failure to maintain the vehicle involved the failed part or parts. NESNA's obligations under this VSC are guaranteed under a motor vehicle mechanical reimbursement insurance policy, Policy Number SFN-68-WA-1, issued to NESNA by American Bankers Insurance Company of Florida. We encourage you to submit your proof of loss directly to NESNA at P.O. Box 685009 (P-3-B), Franklin, TN 37068-5009, Tel. 800-888-5245. The claimant also has the option to submit a claim in writing to the insurer, American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157, Tel. 800-852-2244.

**Wisconsin:** Obligations of NESNA under this VSC are guaranteed under a VSC reimbursement insurance policy. Should NESNA fail to pay or provide service on any claim within 60 days after proof of loss has been filed, or if NESNA becomes insolvent or otherwise financially impaired, the VSC holder is entitled to make a claim directly to American Bankers Insurance Company of Florida, 11222 Quail Roost Drive, Miami, FL 33157, Tel. 800-358-8885.

**THIS CONTRACT IS SUBJECT TO LIMITED REGULATION BY THE OFFICE OF THE COMMISSIONER OF INSURANCE.**

In the state of Wisconsin, preauthorization of repair work is required by NESNA. However, if extenuating circumstances prevent you from obtaining preauthorization, NESNA will not deny a claim based solely on the lack of preauthorization.

Section 3 is amended as follows: A claim will not be denied for failure of the repair facility to submit invoices to NESNA within ninety (90) days of the completion of the authorized repairs.

Section 8 is amended as follows: NESNA may not charge you a cancellation fee greater than 10% of the VSC purchase price. If your vehicle is repossessed, stolen or declared a total loss, you authorize the lender, if any, to cancel this VSC. If NESNA does not pay or credit a refund within 45 days after the return of your contract to us, then we will pay a 10% per month penalty of the refund amount outstanding, which we will add to the amount of your refund. If you cancel your contract after having filed a claim, or 60 or more days after purchasing your contract, then your refund will be based on the lesser of the unused percentage of either time or mileage purchased. For example, if you purchased an 84-month/100,000-mile contract and canceled it at 48 months/60,000 miles, then the unused portion of your time would be 36 months, or 43%, and the unused portion of you mileage would be 40,000 miles, or 40%. As a result, if you paid $1,000 for your contract, then your refund would be 40% (the lesser of the unused percentage of either time or mileage purchased), or $400, less the aforementioned cancellation fee.

**Wyoming:** Obligations of NESNA under this VSC are backed by the full faith and credit of the provider.

Under Section 8 CANCELLATION, the following state requirements apply: If this VSC was financed and no proof of payoff is submitted, then the refund will be paid to the purchaser and the lienholder as an additional payee. Lienholders may cancel this VSC only if your vehicle is a total loss or repossessed.

1.   Provisions for cancellation by the VSC holder: W.S. 26-49-103(e) "... A ten percent (10%) penalty per month shall be added to a refund that is not paid or credited within forty-five (45) days after return of the VSC to the provider."

2.   Provisions for cancellation by the VSC provider: W.S. 26-49-105(k) "... The provider of the VSC shall mail a written notice to the VSC holder at the last known address of the VSC holder contained in the records of the provider at least ten (10) days prior to cancellation by the provider. Prior notice is not required if the reason for cancellation is nonpayment of the provider fee, a material misrepresentation by the VSC holder to the provider or a substantial breach of duties by the VSC holder relating to the covered product or its use."

## 8   CANCELLATION

You or a person authorized by you may cancel this VSC by submitting a written cancellation request which includes the mileage (odometer reading) of the vehicle at the time the cancellation is to be effective, and mailing this information to your selling dealer as listed in the Application/Declaration.

NESNA and/or the Lienholder may cancel this VSC if: a) your vehicle is a total loss or repossessed, or b) your odometer has been stopped or changed during the term of this VSC, or c) the registered vehicle has been used in any manner not covered by this VSC.

If this VSC is cancelled within sixty (60) days from the VSC effective date, then you will receive a full refund provided you have not filed a claim. If you have filed a claim or if this VSC is cancelled after sixty (60) days, then the refund will be calculated based on the greater of the time in force or the mileage driven compared to the total time or mileage of your term. In addition, a processing fee of $50 will be automatically deducted, if applicable, from the refund.

NOTE: If this VSC was financed, then the refund will be paid to the lienholder unless proof of pay-off is submitted.

8

## 9 TRANSFER

This VSC is for the benefit of the Purchaser, and applies only to the vehicle listed in this VSC. However, this VSC may be transferred to subsequent owners of the covered vehicle under the following conditions:

1. The vehicle's service records are current and indicate that the vehicle was maintained in accordance with the Manufacturer's recommendations. In the event service records are not available, NESNA may require the vehicle to be inspected and serviced at an approved repair facility at the owner's expense to ensure the vehicle has been properly maintained. If the inspection and service disclose abnormal vehicle conditions, then the transfer request may be rejected. This determination shall be within the sole discretion of NESNA.

2. The transfer request is made within thirty (30) days of change in ownership.

3. The transfer information and the appropriate signatures are provided in the Transfer Certificate section.

4. A transfer fee of $50 or as noted below, payable to NESNA, is included with the transfer request. Payment may be by check or money order.

An updated VSC will be sent to the subsequent owner upon NESNA's receipt and successful processing of all requested material.

**FOR THE TIME AND MILEAGE TERM "Z" ON THE APPLICATION/DECLARATION PAGE WHICH APPLIES ONLY TO NEW HYUNDAI/KIA VEHICLES: THIS VSC IS NOT TRANSFERABLE FROM THE ORIGINAL VEHICLE OWNER TO SUBSEQUENT OWNERS, AS SUBSEQUENT OWNERSHIP DOES NOT INCLUDE HYUNDAI/KIA'S 10-YEAR/100,000-MILE POWERTRAIN WARRANTY. IF YOUR HYUNDAI/KIA'S CERTIFIED PRE-OWNED LIMITED WARRANTY IS STILL IN EFFECT THEN THE TRANSFER BENEFIT STILL APPLIES.**

9

CUSTOMER

| QualityGuard+Plus® | Applicable only if your contract(s) include Emergency Roadside Assistance (ERA) benefits. Please take a moment to find your VIN & Contract numbers on the Application/Declaration page and write them on the cards at left (if applicable). Please cut out one ERA card and keep in your wallet, purse or glove box in the unlikely event you need ERA for your covered vehicle. | QualityGuard+Plus® |
|---|---|---|
| VIN #: JTDKN3DU4F0463681 | | VIN #: JTDKN3DU4F0463681 |
| Contract #: VSC11345616 | | Contract #: VSC11345616 |
| EMERGENCY ROADSIDE ASSISTANCE 1 - 8 0 0 - 2 2 5 - 2 4 7 6 | | EMERGENCY ROADSIDE ASSISTANCE 1 - 8 0 0 - 2 2 5 - 2 4 7 6 |

**QualityGuard+Plus**

EMERGENCY ROADSIDE ASSISTANCE
1 - 8 0 0 - 2 2 5 - 2 4 7 6

**QualityGuard+Plus**

EMERGENCY ROADSIDE ASSISTANCE
1 - 8 0 0 - 2 2 5 - 2 4 7 6

## 10 TRANSFER CERTIFICATE

Address: _____ City: _____ State: ____

Zip: _____ Phone: _____ Date of Transfer: _____ Odometer at Transfer: _____

Transferred to: _____ Address: _____

City: _____ State: _____ Zip: _____

I have read and understand all the terms and conditions listed above:

Signature of Former Owner: _____ Date: _____

Signature of New Owner: _____ Date: _____

Your transfer request must include the following:

- Current and new VSC holder signatures
- Transfer date and mileage
- Current VSC holder's signature on the transfer request form OR copy of Power of Attorney and signature of that person who is authorized to sign for the current VSC holder
- Change of Ownership documents (at least one of the following: copy of title, registration application, Bill of Sale, and signed Odometer Statement on that date)
- Copies of complete maintenance records indicating the vehicle has been maintained in accordance with the manufacturer's recommendations OR inspection of the vehicle by a dealer and completion of a Vehicle Inspection Report (inspection at owner's expense)
- Transfer fee, by personal check or money order, payable to 'NESNA'. Refer to Section 9 for transfer fee information.

Mail the items listed above, a copy of this Transfer Certificate and your transfer fee payment to:

NESNA
P.O. BOX 685004 (A-6-G)
FRANKLIN, TN 37068-5004

You may also call 800-647-7261 for questions or information regarding your VSC.

Q3S0709GP – SUPREME
Q3R0709GP – DELUXE
Q3Q0709GP – POWERTRAIN

# Exhibit D

Contract Number
DA8036112

 **Security+Plus®**

# TIRE & WHEEL PROTECTION PLAN

| Customer Name | | Effective Date | Retail Cost |
|---|---|---|---|
| RACHAEL | PAGE | 4/28/2018 | $1,000.00 |
| Address redacted | | | |

| City/State/Zip | | | |
|---|---|---|---|
| POUNDRIDGE | NY | 10576 | |

| Dealer Information | Producer Code # |
|---|---|
| NORTH PLAINFIELD NISSAN | 104040 |

Tire Description, Size & Make

| Year, Make, Model, Vehicle Identification Number | | | |
|---|---|---|---|
| 2015 | TOYOTA | PRIUS TECHNOLOGY PAC | JTDKN3DU4F0463681 |

| Type of vehicle (motorcycle, motor home, motor vehicle, other) | Number of wheels (2,4,6,8) |
|---|---|

| Lienholder Information |
|---|
| WELLS FARGO DEALER SERVICES |

Term (in Months): 60

*Please Note:* Maximum available term is 84 months.

## ROAD HAZARD COVERAGE

This contract provides for the repair or replacement of the **Vehicle's** tires and wheels which, during the term of this Agreement, become **Unserviceable** due to a **Road Hazard** covered under this contract. **Unserviceable** means that the tire has been punctured or otherwise damaged to the extent that it is unsafe, or that a wheel will no longer hold a seal with its tire. Tire and/or wheel damage that is cosmetic in nature and that does not render the tire and/or wheel **Unserviceable** is specifically excluded. A **Road Hazard** is a condition on a public roadway which should not exist there, such as potholes, nails, glass, or other road debris.

- *FLAT TIRES:* **You** will be reimbursed for the reasonable costs **You** incur to repair a flat tire caused by a **Road Hazard** while operating the **Vehicle** on public streets and in a legal manner.
- *TIRE REPLACEMENT:* **You** will be reimbursed for the reasonable costs **You** incur to replace a tire, only if a tire covered by this Agreement becomes unrepairable due to damage caused by a **Road Hazard**. This coverage is valid through the tread life of a tire (for motorcycles 2/32" or less is excluded; for all other **Vehicles** 3/32" or less is excluded) and replacement will be made with a tire of like kind and quality to the original tire.
- *WHEELS (RIMS):* **You** will be reimbursed for the repair or replacement of wheels rendered **Unserviceable** due to a **Road Hazard** covered under this Agreement. **We** reserve the right to have damaged wheels repaired at **Our** cost by a service provider of **Our** choosing. **We** further reserve the right to replace the damaged wheel at **Our** cost with a remanufactured wheel of like kind and quality to the wheel that was damaged by the covered **Road Hazard**. **We** will cover wheel replacement only in the event that the damaged wheel cannot be repaired.
- *MOUNTING AND BALANCING:* **You** will be reimbursed for the reasonable costs that **You** incur for mounting, balancing, valve stems, and tire disposal for any tire replaced under this Agreement. However, charges for pressure sensing devices and unspecified charges for shop supplies are excluded.
- *TAXES:* **You** will be reimbursed for the cost of local and state taxes, as directed by state agencies for any tire or wheel replaced under this Agreement.

**NOTE: YOU MUST OBTAIN AUTHORIZATION PRIOR TO REPAIR OR REPLACEMENT. SEE "CLAIMS PROCEDURES" FOR DETAILS.**

By **Your** signature below, **You** acknowledge and agree that **Your** acceptance of this Agreement is voluntary and is NOT a condition precedent to, or a consideration required to obtain financing for a motor vehicle. It is understood by the undersigned that coverage afforded under this contract applies only to any tire or wheel that was on the described **Vehicle** and that the terms, conditions, procedures and limitations have been explained to me and/or are fully understood. **Fraudulent claims will be prosecuted to the fullest extent of the law. THIS CONTRACT MAY ONLY BE PURCHASED AT THE TIME OF VEHICLE PURCHASE.**

Signature(s) _____    Date 4/28/2018 _____    Customer Initials _____

ANJ0118

## AGREEMENT HOLDER RESPONSIBILITIES

Proper tire care is necessary to obtain the maximum mileage and wear from a tire. It is Your obligation to ensure that Your tire/wheel assemblies are kept in balance and alignment, and that Your tires are operated at the proper inflation pressure. Tires should be checked monthly for proper pressure, signs of dry rot, and improper or excessive wear. Any condition that cannot be corrected demands the replacement for the safety of the Vehicle occupants.

## EMERGENCY TRAVEL EXPENSE

In the event that **Your Vehicle** is disabled due to a covered **Road Hazard**, **We** will reimburse **You** for emergency living expenses for up to three (3) days for costs that **You** incur for local lodging and meals. Maximum coverage is fifty dollars ($50) per day inclusive while **Your Vehicle** is being repaired provided that the disablement and repairs occur at least two hundred fifty (250) miles from **Your** primary residence.

## CLAIM PROCEDURES

YOU MUST OBTAIN AUTHORIZATION PRIOR TO REPLACEMENT OF ANY TIRE, AND/OR PRIOR TO ANY REPAIR OR REPLACEMENT OF ANY WHEEL. For authorization and instructions please call the Administrator, NIU of Florida, Inc., at 888-684-9327 Monday through Friday from 9 a.m. to 8 p.m. eastern time. A proof of loss form will be provided which You MUST complete and return to NIU of Florida, Inc. at 800 Yamato Road, Suite 100, Boca Raton, Florida 33431 within thirty (30) days along with the following documentation: 1) Front and back copy of this Agreement; 2) Original replacement or repair invoice which must reflect: a) The tread depth of the damaged tire; b) Whether or not the damaged tire or wheel was repairable, and if not, why not; c) Whether or not the damage was due to a manufacturer's defect; 3) Original receipts for Emergency Travel Expenses, if applicable; and 4) Any other information that the Administrator reasonably requests. In the event that both the tire and/or wheel damage occurs after the Administrators regular business hours, or on a weekend, and repairs must be effected, You may obtain instructions and a proof of loss form online at www.niufl.com. All after-hours instructions must be followed in order to receive reimbursement. Subsequent to after hours repairs/replacements, You must call NIU of Florida, Inc. at 888-684-9327 the next business day to report Your claim. You must complete and return the proof of loss form with the following: (a) the original, paid, repair invoice; (b) legible copies of the front and back of Your Agreement; (c) a legible copy of Your Vehicle purchase order or finance agreement; and (d) photos of the damaged tire(s) and/or wheel(s). **IMPORTANT:** Please note that alloy wheel damage can oftentimes be repaired. In the event that damaged wheels are replaced, Your repair facility must document the reasons why wheel repair was not possible. They should then attempt to obtain a remanufactured wheel to replace the damaged wheel. NOTE: THE ADMINISTRATOR RESERVES THE RIGHT TO INSPECT ANY DAMAGED TIRE AND/OR WHEEL PRIOR TO ITS REPAIR OR DISPOSAL.  FAILURE TO PRESERVE THE DAMAGED PROPERTY MAY RESULT IN CLAIM DENIAL.

## TOWING AND ROADSIDE ASSISTANCE

When arranging for Roadside Assistance, please call 1-866-330-0760. Please reference Your Producer Code and Contract Number (located in the registration section of this Agreement) and **Your** Plan Letter, "R." **You** will not be required to pay any additional fee or sum in addition to the contract fee when **Your** service is for a tow, up to twenty five (25) miles, or other covered service listed below. **You** are entitled to one (1) free service within a seventy two (72) hour period. Covered services not obtained through **Us** are limited to a maximum reimbursement amount of fifty dollars ($50).

- *Towing* - Up to twenty five (25) miles at no out of pocket expense to **You**. Additional mileage is available and will be negotiated prior to sending out a service vehicle. Additional mileage is to be paid by **You** directly to the service provider at the time of service.
- *Emergency Road Service* - Any available road service that is needed to get **Your Vehicle** running (i.e. hose replacement, tightening of cables or belts etc.). **You** are responsible for the actual cost of parts and/or supplies needed.
- *Essential Fluids or Supplies Delivery* - Including gasoline, water, oil, or any supplies necessary to send **Your Vehicle** on its way. **You** are responsible for the actual cost of fluid or supplies delivered.
- *Flat Tire Changes or Repairs* - Includes changing a flat tire with **Your** good spare.
- *Emergency Battery Service* - Includes tightening or cleaning of cables, jumpstarts, and minor adjustments to alternator.
- *Lockout Services* - **We** will send a locksmith if **You** are accidentally locked out of **Your Vehicle**. Access to passenger compartment only.

## TERMS AND CONDITIONS

- **Agreement Holder (You, Your)** is defined as the person(s) listed in the registration section of this Agreement.
- **We, Us, Our** means the Obligor.
- **Selling Dealer** means the dealership listed in the registration section of this Agreement.
- **Vehicle** as used throughout this contract means the conveyance listed in the registration section of this Agreement. In the event the Vehicle is a trailer, the definition of Vehicle will be expanded to include the tow vehicle when the tow vehicle is attached and being used to tow the listed trailer.
- **Commercial Vehicles** are defined as a vehicle in excess of 10,000 lbs or any vehicle used in any manner for any commercial purpose. Travel to and from **Your** regular place of business, and share-the-expense car pools are not considered commercial purposes.
- The term of this Agreement begins on the Effective Date and continues for the number of years specified in the registration section of this Agreement. In the event no term is indicated, this Agreement will default to a term of one (1) year. The maximum term available is eighty four (84) months. This contract is non-renewable, and the period during which coverage applies is limited to the term You purchased.
- **You** will not be required to pay a deductible for this Agreement.
- The territory includes all fifty (50) United States, Canada and Puerto Rico.
- Eligible vehicles include current model year plus ten (10) years prior.
- The Administrator makes every effort to provide service but there are instances where they have no vendor available in Your area. In such an instance, the Administrator reserves the right to make cash settlements in lieu of providing service. Such settlement will be based on market rates for like services in Your general geographic area.
- **You** may obtain a full copy of Our company's privacy notice by sending a written request to the Obligor, Attention: Privacy Notice Department, at 800 Yamato Road, Suite 100, Boca Raton, FL 33431.
- **THIS IS NOT AN INSURANCE CONTRACT.**

## EXCLUSIONS

This Agreement does not cover: a) Any damage that occurs outside the United States, Canada or Puerto Rico; b) Any damage resulting from off-road use, racing, collision with a curb, median, or another vehicle, chain damage, misuse, abuse, lack of proper maintenance, misalignment, suspension problems, use on a construction site or on roads not regularly maintained, vandalism or

malicious mischief, theft, fire, or any loss covered by primary physical damage insurance; c) Any damage caused by driving on tires that are improperly inflated; d) Any damage to tires and/or wheels which are undersized, oversized, or otherwise not recommended by the Vehicle manufacturer; e) Any damage to tires and/or wheels transferred from another vehicle subsequent to the effective date of this Agreement; f) Any damage which is covered by any other Agreement, including warranties issued by the manufacturer, by public announcement of a recall, established its responsibility to replace tires or wheels; g) Any damage that is the result of a manufacturer's defect; h) Any consequential loss or damage whatsoever, including loss, damage, or injury to persons or property resulting from the failure of any of the parts of the Vehicle described herein, the replacement of which are covered under the terms and conditions of this Agreement; i) Any loss where You or any person on Your behalf falsely swears or commits any fraudulent act with respect to any claim; j) Any wheel repair or replacement, or any tire replacement that is not pre-authorized; k) Any loss that is not reported to the Administrator within sixty (60) days from the date the damage occurs; l) Commercial Vehicles; m) Any damage to tires with tread depth of 3/32" (2/32" for motorcycles only) or less at the lowest point of the tire; n) Any damage related to acts of God or acts of war or terrorism; o) Any pre-existing conditions or damage.

## CANCELLATION

To initiate the cancellation process, **You** must contact the **Selling Dealer** or the Administrator. If this Agreement is cancelled by **You** within thirty (30) days from the date of purchase, **You** will receive a refund of the full purchase price. If **You** cancel this Agreement after the first thirty (30) days, or if a claim was made during this time period, **You** will be refunded on a prorated basis less the amount of any claims paid or payable. If the Administrator does not refund the purchase price within forty five (45) days, they will pay a penalty of ten percent (10%) of the purchase price for each thirty (30) day period that the refund remains unpaid. The Administrator may cancel this service contract by mailing written notice of cancellation to **You** at the last known address in their records. Notice will be mailed before the fifteenth (15th) day preceding the effective date of the cancellation. The cancellation notice will state the effective date and reason for cancellation. The Administrator is not required to send a written notice of cancellation if they discover one of the following: 1) a material misrepresentation or omission by **You**; or 2) failure by **You** to pay an amount when due.

## TRANSFER

This Agreement may be transferred by **You** to a subsequent private purchaser of the **Vehicle** for the remainder of the original term (dealers excluded). This Agreement is not transferable to another vehicle. The right to cancel this Agreement is not transferable. To transfer this Agreement to another owner, **You** must submit the following, to the Administrator, within thirty (30) days from the date of sale: a) A letter containing the name and address of the new owner, and **Your** authorization to transfer; b) A copy of the bill of sale or other evidence showing the change in ownership; c) A check or money order for forty dollars ($40) payable to the Administrator for the transfer fee.

## ARBITRATION

In the event that **You** and the Administrator fail to agree to the amount of a covered loss, or whether coverage is provided under this Agreement, each party hereby agrees to submit the dispute to binding arbitration under the rules of the American Arbitration Association (AAA). Arbitration shall proceed solely on an individual basis without the right for any dispute to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of others. The arbitrator's authority to resolve and make written awards is limited to disputes between **You** and the Administrator alone. Claims may not be joined or consolidated unless agreed to in writing by all parties. The parties agree that arbitration will be heard by a single arbitrator either by telephone, or in the county of **Your** residence. For all non-frivolous claims, the Administrator shall pay the arbitrator's fees. The arbitrator shall be selected by mutual agreement of the parties. If the parties are unable to agree to an arbitrator, the arbitrator will be selected by a court of competent jurisdiction, each party to bear its own costs.

## OBLIGOR

Nation Motor Club, LLC. • 800 Yamato Road, Suite 100 • Boca Raton, FL 33431 • 888-684-9327

## ADMINISTRATOR

NIU of Florida, Inc. • 800 Yamato Road, Suite 100 • Boca Raton, FL 33431 • 1-888-684-9327

## STATE PROVISIONS

If a covered service is not provided to **You** by the provider no later than the sixtieth (60th) day after proof of loss has been filed, or if a refund or credit is not paid before the forty-sixth (46th) day after the date on which the contract is returned to the provider, **You** may apply for reimbursement directly to the reimbursement insurance company. Obligations of the provider under this service contract are insured under a service contract reimbursement insurance policy provided by Wesco Insurance Company at 59 Maiden Lane, 43rd Floor, New York, NY 10038; (866) 505-4048. **This contract does not cover pre-existing conditions. Repairs covered under this Agreement may be affected with one or more parts supplied by a source other than the manufacturer of Your motor vehicle. This contract does not allow You to recover consequential damages.**

# Exhibit E

NISSAN EXTENDED SERVICES
NORTH AMERICA
P.O. Box 685004 (A-6-G)
Franklin, TN 37068-5004
Customer questions: 800-NISSAN1



Security+Plus'          QualityGuard+Plus'

# DEALER CANCELLATION REQUEST FORM
### Processed via Policy, Claims, and Reporting Solution (PCRS)

## Step 1: REASON FOR CANCELLATION (attach supporting documents)

**Proof of mileage is always required. Make sure the supporting document(s) below include mileage.**
Cancellation Reason (select below):

Customer Request

- [ ] **Cancel & Reissue:** corrected policy must be entered into PCRS
- [x] **Customer Request:** attach odometer statement or recent service record dated within 60 days of cancellation date
- [ ] **Default on Loan:** attach letter from lienholder
- [ ] **Duplicate:** same customer and VIN#
- [ ] **Entered in Error:** attach original buyers order showing policy was not purchased
- [ ] **Private Party Sale:** attach copy of odometer statement or bill of sale showing date and mileage
- [ ] **Repossession/Abandonment:** attach repo/abandon letter from lienholder

- [ ] **Rewrite:** attach documents showing rewrite
- [ ] **Theft:** attach insurance report or police report showing loss date and mileage
- [ ] **Too Expensive:** attach odometer statement or recent service record dated within 60 days of cancellation date
- [ ] **Total Loss:** attach insurance report or lienholder's letter of demand showing total loss date and mileage
- [ ] **Trade:** attach copy of odometer statement or buyer's order showing date and mileage
- [ ] **Unwind:** attach unwind documents showing date of unwind

NESNA reserves the right to request additional documentation to support the cancellation reason (i.e. missing cancellation date and mileage)

## Step 2: CUSTOMER, VEHICLE AND POLICY INFORMATION

Customer Name: **RACHAEL PAGE**
Customer Address (current): redacted          **LN POUND RIDGE, NY 10576**
VIN#: **JTDKN3DU4F0463681**          Policy#: **VSC11345616**

## STEP 3: CANCELLATION DATE, MILEAGE, REFUND INFORMATION

Date: **5/14/2018**    Mileage: **14,999**    Retail Refund Amount: **$3,500.00**

## STEP 4: DEALERSHIP INFORMATION (the Dealer completing this form)

Dealer Name (PRINT) NORTH PLAINFIELD NISSAN 3711/5564    Dealer Code **5564**    Dealer Signature _____

- A refund quote can be obtained in the cancellation section of PCRS
- All cancellation requests are now processed via PCRS with supporting documents attached
- All refunds are credited to the cancelling dealership's Non-Vehicle Account statement
  - Policies financed through Service Payment Plan (SPP) will be refunded directly to SPP for proper disbursement, unless proof of loan payoff is attached
- Cancelling dealership is responsible for issuing a check for the RETAIL REFUND to the appropriate party (LIENHOLDER/CUSTOMER)
  - Cancelling dealership is responsible for verifying lien holder payoff before refunding customer
  - If the cancelling dealership is not the original selling dealership, then any unearned portion will be debited to the original selling dealer's NVA

## STEP 5: CUSTOMER SIGNATURE AND DATE

I hereby request cancellation of the VSC/PMA listed above. In consideration of said cancellation, I do hereby release and forever discharge Nissan Extended Services North America, its parent, subsidiaries and the affiliates of each entity, as well as each office, agent, distributor, employee, attorney, dealer successor and assignee of any of the above from and against any and all expenses, damages, claims, demands, suit, losses, judgments, liabilities, actions, payments and all costs whatsoever (including without limitation, attorney's fees) with respect to the VSC cancelled. In addition, a $50 processing fee ($25 in AL, CA, FL, NV and WA; $0 in GA) will be automatically deducted from the retail refund amount. **This form must be completed in its entirety in order for the cancellation to be processed. I understand that this Cancellation Request is irrevocable. Please allow up to 30 days for processing upon complete submission. The customer must sign the cancellation request.**

**RACHAEL PAGE**          x _Rachael Page_          **5/14/2018**
PRINT NAME          CUSTOMER SIGNATURE          DATE



NISSAN EXTENDED SERVICES
NORTH AMERICA
P.O. Box 685004 (A-8-G)
Franklin, TN 37068-5004
Customer questions: 1-800-NISSAN1

Security+Plus®          QualityGuard+Plus®

# DEALER CANCELLATION REQUEST FORM
## Processed via Policy, Claims, and Reporting Solution (PCRS)

### Step 1: REASON FOR CANCELLATION (attach supporting documents)

**Proof of mileage is always required. Make sure the supporting document(s) below include mileage.**

Cancellation Reason (select below): _____

☐ **Cancel & Reissue:** corrected policy must be entered into PCRS
☑ **Customer Request:** attach odometer statement or recent service record dated within 60 days of cancellation date
☐ **Default on Loan:** attach letter from lienholder
☐ **Duplicate:** same customer and VIN#
☐ **Entered in Error:** attach original buyers order showing policy was not purchased
☐ **Private Party Sale:** attach copy of odometer statement or bill of sale showing date and mileage
☐ **Repossession/Abandonment:** attach repo/abandon letter from lienholder

☐ **Rewrite:** attach documents showing rewrite
☐ **Theft:** attach insurance report or police report showing loss date and mileage
☐ **Too Expensive:** attach odometer statement or recent service record dated within 60 days of cancellation date
☐ **Total Loss:** attach insurance report or lienholder's letter of demand showing total loss date and mileage
☐ **Trade:** attach copy of odometer statement or buyer's order showing date and mileage
☐ **Unwind:** attach unwind documents showing date of unwind

NESNA reserves the right to request additional documentation to support the cancellation reason (i.e. missing cancellation date and mileage)

### Step 2: CUSTOMER, VEHICLE AND POLICY INFORMATION

Customer Name: Rachel Page

Customer Address (current): _____ redacted _____ POUND RIDGE NY 10576

VIN#: JTDKN3DU4F0463681          Policy#: DAS036112

### STEP 3: CANCELLATION DATE, MILEAGE, REFUND INFORMATION

Date: 5/14/18          Mileage: 15352          Retail Refund Amount: $1005°°

### STEP 4: DEALERSHIP INFORMATION (the Dealer completing this form)

Dealer Name (PRINT) NORTH PLAINFIELD NISSAN    Dealer Code SJ64    Dealer Signature _____

- A refund quote can be obtained in the cancellation section of PCRS
- All cancellation requests are now processed via PCRS with supporting documents attached
- All refunds are credited to the cancelling dealership's Non-Vehicle Account statement
  □ Policies financed through Service Payment Plan (SPP) will be refunded directly to SPP for proper disbursement, unless proof of loan payoff is attached
- **Cancelling dealership is responsible for issuing a check for the RETAIL REFUND to the appropriate party (LIENHOLDER/CUSTOMER)**
  □ Cancelling dealership is responsible for verifying lien holder payoff before refunding customer
  □ If the cancelling dealership is not the original selling dealership, then any unearned portion will be debited to the original selling dealer's NVA

### STEP 5: CUSTOMER SIGNATURE AND DATE

I hereby request cancellation of the VSC/PMA listed above. In consideration of said cancellation, I do hereby release and forever discharge Nissan Extended Services North America, its parent, subsidiaries and the affiliates of each entity, as well as each office, agent, distributor, employee, attorney, dealer successor and assignee of any of the above from and against any and all expenses, damages, claims, demands, suit, losses, judgments, liabilities, actions, payments and all costs whatsoever (including without limitation, attorney's fees) with respect to the VSC cancelled. In addition, a $50 processing fee ($25 in AK, AL, AZ, CA, FL, NC and WA; $0 in GA, KY, NH, NM and WV) will be automatically deducted from the retail refund amount. **This form must be completed in its entirety in order for the cancellation to be processed. I understand that this Cancellation Request is irrevocable.** Please allow up to 30 days for processing upon complete submission. The customer must sign the cancellation request.

Rachael Page RN                    X _____                    5/15/18

PRINT NAME                         CUSTOMER SIGNATURE                       DATE

# Exhibit F



<!-- -->                                                                          1101 Laurel Oak Road, Suite 100
                                                                          Voorhees, NJ 08043

November 28, 2018

David C. Ricci, Esq.
Law Office of David C. Ricci, LLC
51 JFK Parkway
1st Floor West
Short Hills, NJ 07078
Via Email to: dricci@njconsumerlawyer.com

GPB Cars 12, LLC
545 US Highway 22
North Plainfield, NJ 07060
**Via Mail**

Nissan Extended Services North America, Inc.
1 Nissan Way
Franklin, TN 37067
**Via Mail**

**Case Number: 01-18-0003-5713**

Rachael Page
-vs-
GPB Cars 12, LLC d/b/a North Plainfield Nissan
-vs-
Nissan Extended Services North America, GP

Dear Parties:

As of this date we have not received the required fees from the business GPB Cars 12, LLC d/b/a North Plainfield Nissan in this matter. Accordingly, we must decline to administer this case and have closed our file. According to R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

Further, because the business' failure to remit the foregoing constitutes a failure to adhere to our policies regarding consumer claims, we may decline to administer future consumer arbitrations involving GPB Cars 12, LLC d/b/a North Plainfield Nissan. The AAA's consumer policies can be found on the AAA's website, www.adr.org. We request that the business remove the AAA name from its consumer arbitration clause so that there is no confusion to the public regarding our decision.

Pursuant to the AAA's current policy, in the normal course of our administration, the AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that the AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the date of this letter.

If you have any questions, please email ConsumerFiling@adr.org.

Sincerely,

Consumer Filing Team
Email: ConsumerFiling@adr.org
Fax: (877)304-8457