<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| RACHEL A. PAGE, individually and on behalf of others similarly situated, | | |
| Plaintiff, | | Civ. No. 19-11513 |
| v. | | **OPINION** |
| GPB CARS 12, LLC d/b/a NORTH PLAINFIELD NISSAN, NISSAN EXTENDED SERVICES NORTH AMERICA, G.P., and NATION MOTOR CLUB a/k/a Nation Safe Drivers a/k/a NSD, | | |
| Defendants. | | |

<u>THOMPSON, U.S.D.J.</u>

**<u>INTRODUCTION</u>**

This matter comes before the Court upon three motions to dismiss filed separately by Defendants GPB Cars 12, LLC d/b/a North Plainfield Nissan ("NP Nissan"), (ECF No. 31,) Nissan Extended Services North America, G.P. ("NESNA"), (ECF No. 13,) and Nation Motor Club, LLC a/k/a Nation Safe Drivers a/k/a NSD ("NSD"), (ECF No. 14) (collectively, "Defendants"). Plaintiff Rachael Page ("Plaintiff") opposes these motions. (ECF Nos. 27, 28, 36.) The Court has decided the motions based on the written submissions and without oral argument, pursuant to Local Rule 78.1(b). For the reasons stated herein, Defendant NP Nissan's Motion to Dismiss is denied, Defendant NESNA's Motion to Dismiss is granted, and Defendant NSD's Motion to Dismiss is granted.

## BACKGROUND

**I.       Allegations Concerning Purchase of Vehicle and Service Contracts**

Plaintiff alleges that in April 2018, she captured a screen shot of an online advertisement by Defendant NP Nissan that listed the price of a pre-owned Toyota Prius as $16,898.00 without any disclaimers, qualifiers, or limitations. (Compl. ¶¶ 18–20, Ex. A, ECF No. 1.) When Plaintiff visited Defendant NP Nissan's dealership on April 28, 2018, a sales representative told Plaintiff that she would have to pay an additional $675.76 in non-optional fees and purchase a $3,500.00 Quality Guard Plus Vehicle Service Contract ("VSC") from Defendant NESNA in order to obtain financing. (*Id*. ¶¶ 26–27.) The sales representative also recommended that Plaintiff purchase the Security Plus Tire & Wheel Protection Plan ("TWPP") for $1,000 from Defendant NSD. (*Id*. ¶ 28.)

Plaintiff signed the Motor Vehicle Retail Order ("Retail Order") and the Retail Installment Sale Contract ("RISC") to purchase the vehicle and obtain financing. (*Id*. ¶ 29.) The RISC included the $3,500.00 VSC as part of the "amount financed," such that Plaintiff was required to pay interest on this amount. (*Id*. ¶¶ 36, 59.) Plaintiff contends that the $3,500.00 VSC was a fee incident to the extension of credit, and therefore the amount should have been part of the "finance charges," rather than the "amount financed." (*Id*. ¶ 101.)

Both the VSC and TWPP contracts contain cancellation provisions that guarantee a full refund on the purchase price if the purchaser submits a cancellation request within a specified period after the date of purchase (sixty days for the VSC, thirty days for the TWPP). (*Id*. ¶¶ 41–42, 46.) The contracts require the providers to complete the refund within forty-five days of the cancellation request, and, if they fail to do so, guarantee a 10% penalty for each thirty-day period that the refund remains unpaid. (*Id*.) Plaintiff executed and submitted refund requests for both the

VSC and TWPP on May 15, 2018, seventeen days after the date of purchase. (*Id*. ¶ 53.) She did not receive the $3,500.00 refund for the VSC until July 31, 2018, during which time she continued to pay interest on that amount. (*Id*. ¶ 58–59.) Defendant NESNA did not provide Plaintiff with the 10% penalty for the delay. (*Id*. ¶ 149–50.) Plaintiff never received a refund for the TWPP from Defendant NSD. (*Id*. ¶ 60.)

## II.   Initiation of Arbitration

The Retail Order contains an arbitration agreement ("Arbitration Agreement"), in which the parties agree to arbitrate all disputes through the American Arbitration Association ("AAA") and to waive any complaints on behalf of a class. (*Id*. Ex. B.) The Arbitration Agreement provides that Defendant NP Nissan "shall advance both party's filing, service, administration, arbitrator, hearing, and other fees, subject to reimbursement by decision of the arbitrator." (*Id*.)

Plaintiff alleges that she filed an arbitration demand with the AAA on September 25, 2018 against Defendants and served the demand via certified mail. (*Id*. ¶ 68.) The demand was delivered to NP Nissan on September 27, 2018, and to NESNA and NSD on October 1, 2018. (*Id*. ¶ 69.) AAA then sent two letters to each Defendant providing notice of the demand and requesting payment of the fee. (*Id*. ¶ 70.) NSD and NESNA responded that they were not subject to the Arbitration Agreement, and Plaintiff dismissed the demand as to NSD. (*Id*. ¶ 72.) Plaintiff alleges that her counsel then sent a letter via regular mail and facsimile to NP Nissan's General Manager on October 29, 2018. (*Id*. ¶ 74.) NP Nissan did not respond to Plaintiff's or the AAA's letters, although on November 23, 2018, Plaintiff alleges NP Nissan presented her with a settlement offer, which she rejected. (*Id*. ¶ 78.) Defendant NP Nissan contends that it never received any of these notices, and that the check sent to Plaintiff was not a settlement offer, but rather the refund owed for the TWPP cancellation. (NP Nissan Reply at 7, ECF No. 37.)

3

On November 28, 2018, AAA informed the parties that it declined to administer the case due to the failure of Defendant NP Nissan to pay the required arbitration fees, and that the parties accordingly may submit their dispute to the appropriate court for resolution. (*Id*. Ex. F.) The letter also stated: "we may decline to administer future consumer arbitrations involving GPB Cars 12, LLC d/b/a North Plainfield Nissan . . . We request that the business remove the AAA name from its consumer arbitration clause so that there is no confusion to the public regarding our decision." (*Id*.)

## III.     Procedural History

After the failed arbitration attempt, Plaintiff filed this action on April 26, 2019. Plaintiff alleges four counts against Defendant NP Nissan: (1) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, for Defendant's failure to make accurate disclosures of the annual percentage rate, finance charge, and amount financed in the RISC (Count 1) (Compl. ¶¶ 87–104); (2) violation of the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8–2 *et seq.*, for Defendant's inclusion of the service contract fees in the amount financed in the RISC (Count 2) (Compl. ¶¶ 105–09); (3) violations of the CFA, N.J.S.A. 56:8–4, and Motor Vehicle Advertising Practices regulations ("MVAP"), N.J.A.C. 13:45A–26A.4, for Defendant's refusal to sell or lease the advertised vehicle at the price set forth in the online advertisement (Count 3) (Compl. ¶¶ 111–24); and (4) violations of the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12–14 to –18, based on the violations of the TILA, CFA, and MVAP (Count 4) (Compl. ¶¶ 125–36). Plaintiff also alleges that Defendant NESNA violated the Consumer Service Contract Act ("CSCA"), N.J.S.A. 56:12–93(k), (Count 5) and CFA, N.J.S.A. 56:8–2, (Count 6) due to its failure to pay the 10% penalty due under the VSC for the delay in refunding Plaintiff. (Compl. ¶¶ 137–59.) Defendant further alleges violations of the CSCA,

4

N.J.S.A. 56:12–93(k) (Count 7) and CFA, N.J.S.A. 56:8–2, (Count 8) by Defendant NSD for failing to provide the refund due under the TWPP. (*Id*. ¶¶ 160–74.) Plaintiff brings this lawsuit as a class action. (*Id*. ¶¶ 80–86.)

On July 16, 2019, Defendant NESNA and Defendant NSD filed separate motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (NESNA Mot., ECF No. 13; NSD Mot., ECF No. 14.) On September 5, 2019, Defendant NP Nissan filed its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, seeking dismissal and referral to arbitration based on the Arbitration Agreement. (NP Nissan Mot., ECF No. 31.) These motions are currently before the Court.

## LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.*; *see also Iqbal*, 556 U.S. at 679. Finally, the court must assume the veracity of all well-pleaded factual allegations and "determine whether the facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679); *see also Malleus*, 641 F.3d at 563. If the complaint does not demonstrate more than a "mere possibility of misconduct," it must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir.

5

2009) (quoting *Iqbal*, 556 U.S. at 679).

Although a district court generally must confine its review on a Rule 12(b)(6) motion to the pleadings, *see* Fed. R. Civ. P. 12(d), "a court may consider certain narrowly defined types of material" beyond the pleadings, *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999), including matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal citation omitted).

## ANALYSIS

### I.    Arbitration Agreement

Defendant NP Nissan does not contest the allegations in the Complaint, but rather argues that the claims must be dismissed and referred to arbitration due to the existence of a valid and enforceable Arbitration Agreement. (NP Nissan Mot. at 7–11.) Parties agree that the Arbitration Agreement was a validly formed contract, and that Plaintiff's claims fall within the scope of that contract. Plaintiff, however, argues that Defendant NP Nissan has waived its right to enforce the arbitration agreement due to its failure to pay the arbitration fee after Plaintiff initiated the arbitration proceedings, as required under the Arbitration Agreement. (Opp'n to NP Nissan at 7–18, ECF No. 36.) Such a failure, Plaintiff contends, is both a default under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, and a material breach of the contract. (*Id.*)

Section 3 of the FAA requires courts to stay a case if the suit is referable to arbitration, "provid[ed] the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Other circuits have found that a party's failure to pay the required arbitration fee is a default, barring that party's right to seek arbitration. *See, e.g.*, *Pre-Paid Legal Services, Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015*)* ("Failure to pay arbitration fees constitutes a

6

'default' under § 3."); *Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197 (9th Cir. 2003) (waiving defendant's right to arbitrate after defendant failed to pay the arbitration fees). Although Defendant NP Nissan seeks a dismissal of the case and referral to arbitration (presumably under Section 4 of the FAA), rather than a stay under Section 3, a default under Section 3 will similarly prevent the Court from granting such a dismissal and referral to arbitration. *See Stowell v. Toll Bros.*, 2007 WL 30316, at *1 (E.D. Pa. Jan. 4, 2007) ("The court… concludes that since Defendant's default in the arbitration proceeding by failing to file the required fee would preclude the court from staying proceedings under Section 3 [of the FAA], that Section 4 cannot require the court to compel arbitration.").

The FAA also provides that arbitration agreements may be found unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2). The New Jersey Supreme Court has held that a party's "failure to advance required fees that results in the dismissal of the arbitration claim . . . amounts to a material breach," relieving the non-breaching party of its obligations under the arbitration agreement. *Roach v. BM Motoring, LLC*, 155 A.3d 985, 995 (N.J. 2017). Analyzing the considerations for material breach under the Restatement (Second) of Contracts § 241 (1981), the Court found that the failure to pay the fee deprived the non-breaching party of the benefit of the agreement and violated the duty of good faith and fair dealing.[1] *Id*. As a matter of policy, the Court reasoned that "without a finding of material breach,

---

[1] To determine if a breach is material, the Restatement (Second) of Contracts requires consideration of: "(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and] (e) the extent to which the behavior of the party

the result would be a 'perverse incentive scheme'—a company could ignore an arbitration

demand and, if the claimant did not abandon the claim, later compel arbitration." *Id*. at 181

(quoting *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005)).

Defendant NP Nissan does not dispute that a party's intentional refusal to pay a required

arbitration fee is a default or material breach, but rather argues that this case is distinguishable

from those cited above because Defendant NP Nissan was unaware of Plaintiff's initiation of the

arbitration proceedings. (NP Nissan Reply at 6.) Defendant NP Nissan maintains that it never

received the arbitration demand or the numerous letters sent by Plaintiff and the AAA, either

because they were not sent to Defendant NP Nissan's official service address or because of a

"clerical error on the mail intake employee" at the dealership address. (*Id*. at 1.) For this reason,

Defendant NP Nissan contends that it did not act in bad faith, and the Arbitration Agreement is

still valid. (*Id*. at 8–9.) Plaintiff, meanwhile, alleges that she sent at least two letters, and the

AAA sent at least three letters, to Defendant NP Nissan notifying it of the initiation of arbitration

proceedings and requesting payment of the fee. (Compl. ¶¶ 68–78.) These letters were sent to

Defendant NP Nissan's dealership, which Defendant NP Nissan claims is not its proper service

address. (*See* NP Nissan Mot. at 6.) Taking into consideration the New Jersey Business Gateway

attached to Plaintiff's Opposition, it appears that the dealership address is indeed the "Main

Business Address" of NP Nissan, although it is not the "Agent/SOP Address." (Opp'n to NP

Nissan, Ex. A.)

Even if the letters were not sent to Defendant's official service address, the service rules

under the AAA Consumer Arbitration Rules are fairly broad, permitting service "on a party by

mail or email addressed to the party or its representative at the last-known address or by personal

---

failing to perform or to offer to perform comports with standards of good faith and fair dealing."
Restatement (Second) of Contracts § 241 (1981).

service . . .  provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party." Am. Arbitration Ass'n, *Consumer Arbitration Rules* R-52(a) (Sept. 1, 2014). Plaintiff and the AAA sent notice to Defendant NP Nissan at its main business address, and there is a notice of receipt of at least one of those letters. (Compl. ¶¶ 68–69.) Taking all facts in the Complaint as true, the Court cannot at this stage find that the service on Defendant NP Nissan at its main business address was improper. Furthermore, Defendant NP Nissan's suggestion that a clerical error caused five letters—mailed on separate dates from separate senders—to all go missing is unpersuasive.

For the reasons stated above, Defendant NP Nissan's Motion to Dismiss the suit and refer the case to arbitration is denied. Since NP Nissan did not contest the claims against it, those claims (Counts 1–4) can proceed.

## II.   Consumer Service Contract Act Claims Against Defendant NESNA and Defendant NSD

Plaintiff brings claims against Defendant NESNA and Defendant NSD for violations of the CSCA, N.J.S.A. 56:12–93(k) (Counts 5 and 7). Defendant NESNA and Defendant NSD argue that the CSCA does not create a private right of action, as evidenced by the statute's explicit enforcement provision that gives enforcement power to the Director of the Division of Consumer Affairs and provides that violations of the CSCA are actionable under the CFA. N.J.S.A. 56:12–96. (NESNA Mot. at 9–11, ECF No. 13; NSD Mot. at 5–6, ECF No. 14.) For support, Defendants rely on *Woturski v. Fed. Warranty Serv. Corp.*, 2018 WL 1399303, at *1 (D.N.J. Mar. 19, 2018), which states in passing that "there is apparently no private right of action under the [C]SCA." (NESNA Mot. at 9; NSD Mot. at 5.) Defendants also contend that New Jersey courts disfavor "infer[ring] a statutory private right of action where the Legislature has not expressly provided for such action." *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*,

9

773 A.2d 1132, 1142 (N.J. 2001). (NESNA Mot. at 9; NSD Mot. at 6.)  In response, Plaintiff

seemingly alters her claim to instead seek a declaratory judgment that Defendants violated the

CSCA pursuant to the Declaratory Judgment Act, N.J.S.A. 2A:16–53. (Opp'n to NESNA at 18–

19, ECF No. 28; Opp'n to NSD at 19, ECF No. 27.)

   Although the CSCA on its face does not appear to create a private right of action, the

Court need not resolve this question because it is clear that neither Defendant NESNA nor

Defendant NSD violated Section 93(k) of the CSCA, which mandates: "A service contract…

*shall contain* the requirements set forth in this section, as applicable:

> (k) the conditions governing the cancellation of the service contract by the service
> contract holder, which shall:
>
> (1) permit the contract holder, if the contract holder makes no claim arising under
> the contract, to cancel the contract:
>
> (a) within 10 days of receipt of the contract, or a longer period specified in the
> contract, if delivered at the time of purchase; or
>
> (b) within 20 days of the date the contract was sent to the contract holder, or a
> longer period specified in the contract, if not delivered at the time of purchase;
> and
>
> (2) if cancelled within the time period specified in subparagraph (a) or (b) of
> paragraph (1) of this subsection, require the provider to provide the contract
> holder with the full purchase price or amount paid on the contract by refund or
> credit to the account of the contract holder, and to additionally pay the contract
> holder a 10% per month penalty, based upon the purchase price of the contract, if
> the refund or credit is not completed within 45 days of the cancellation of the
> contract.

N.J.S.A. 56:12–93(k) (emphasis added). This section clearly regulates the *content* of service

contract provisions, rather than the *performance* of such provisions. Plaintiff's claims are not

based on the contents of the VSC or TWPP, but rather Defendants' non-performance of these

contracts.

The language in the VSC and TWPP contracts clearly abides by the requirements set forth in the CSCA. The VSC, which constitutes a service contract under the CSCA, allows a full refund if cancelled within sixty days from the contract's effective date, and provides that NESNA will pay a 10%-per-month penalty if the refund or credit is not completed within forty-five days of the cancellation date. (Compl., Ex. C.) Similarly, the TWPP, which also constitutes a service contract, allows for a full refund if cancelled within thirty days from the date of purchase (which appears to be the effective date), and a 10%-per-month penalty if the refund is not completed within forty-five days of the cancellation. (Compl., Ex. D.) For these reasons, Counts 5 and 7 of the Complaint are dismissed.

## III.    Consumer Fraud Act Claims Against Defendant NESNA and Defendant NSD

Plaintiff claims Defendant NESNA and Defendant NSD violated the Consumer Fraud Act ("CFA") based on 1) Defendant NESNA's failure to pay the 10%-per-month penalty on the VSC refund, and 2) Defendant NSD's failure to provide the refund for the TWPP. (Compl. ¶¶ 152–59, 168–74.) Section 2 of the CFA prohibits

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate . . . .

N.J.S.A. 56:8–2. "Merchandise" is defined broadly to include "goods, commodities, services or anything offered directly or indirectly to the public for sale." N.J.S.A. 56:8–1. A party who suffers an "ascertainable loss" from a violation of the CFA may recover treble damages, costs, and attorneys' fees. N.J.S.A. 56:8–19.

A CFA claim requires showing (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal relationship between the conduct and the loss. *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 929 A.2d 1076, 1086 (N.J. 2007) (internal citation omitted).

11

Unlawful conduct may consist of an affirmative act, an omission, or a regulatory violation. *Cox v. Sears Roebuck & Co.*, 567 A.2d 454, 462 (N.J. 1994). For affirmative acts, a plaintiff need not show intent to commit the unlawful act, whereas for omissions, a plaintiff must show the defendant acted with knowledge or intent. *See id.* Despite the CFA's broad language, "reasonable limits must be placed upon the operation of the Act in order that its enforcement will properly reflect legislative intent." *Barry by Ross v. N.J. State Highway Auth.*, 585 A.2d 420, 423 (N.J. Super. Ct. Ch. Div. 1990).

Plaintiff attempts to characterize the alleged unlawful conduct of Defendant NESNA and Defendant NSD as "false promises" or "unconscionable commercial practices."  (Opp'n to NSD at 13; Opp'n to NESNA at 13.) First, Plaintiff argues that the cancellation provisions in the VSC and TWPP constituted affirmative representations of Defendants' future performance, which became false promises upon their failure to fully refund Plaintiff. (*Id.*) Second, Plaintiff claims that the withholding of the required penalty by Defendant NESNA, and the failure to pay the refund by Defendant NSD, constituted unconscionable commercial practices because they lacked good faith and fair dealing.[2] (*Id.*)

A.    *False Promise*

Mere failure to perform on a contract cannot constitute a false promise actionable under the CFA, unless the promisor knew at the time the contract was formed that he did not intend to fulfill the promise. *See Barry*, 585 A.2d at 423–24; *see also Mullin v. Auto. Prot. Corp.*, 2008 WL 4509612, at *2–3 (D.N.J. Sept. 29, 2008) (requiring evidence that defendant "never intended to fulfill its obligations under the contract" for a breach of contract to constitute a fraudulent

---

[2] Plaintiff also argues that Defendant NSD and Defendant NESNA's actions were unconscionable commercial practices because they violated the CSCA. (*Id.*) Since this Court has found no basis for Plaintiff's CSCA claims, this cannot be a basis for finding a violation under the CFA.

misrepresentation under the CFA). As explained in *Barry*, a finding to the contrary would convert every breach of contract action into a violation of the CFA. 585 A.2d at 423–24; *see also Hunt Constr. Grp., Inc. v. Hun Sch. of Princeton*, 2009 WL 1312591, at *4 (D.N.J. May 11, 2009) (rejecting a claim that a party's failure to fully perform under a contract turned said contract provision into an affirmative misrepresentation).

Plaintiff has not alleged any facts to suggest that either Defendant NESNA or Defendant NSD entered into the contracts with Plaintiff with an intent to breach the cancellation provisions within those contracts. Thus, Plaintiff cannot characterize the contracts at issue as false promises or misrepresentations actionable under the CFA.

B.     *Unconscionable Commercial Practice*

The New Jersey Supreme Court has held that although "unconscionable commercial practice" implies conduct that lacks good faith and fair dealing, "a breach of warranty, or any breach of contract, is not per se unfair or unconscionable . . . and . . . alone does not violate a consumer protection statute." *Cox*, 647 A.2d at 462 (internal citations omitted). Instead, there must be "substantial aggravating circumstances" in addition to the breach. *Id.*; *see also Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997). To meet this standard, a plaintiff must demonstrate that the business behavior in question "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.,* 655 A.2d 417, 430 (N.J. 1995) (finding substantial aggravating factors where a lawnmower repair shop recommended unnecessary services such as the rebuilding of a carburetor that was in good condition and the installation of parts in a machine that were not needed). A finding of substantial aggravating factors often turns on a defendant's intent to deceive. *See, e.g.*, *Venditto v. Vivint, Inc.*, 2015 WL 926203, at *14 (D.N.J. Mar. 2, 2015)

13

(finding no aggravating factors where defendant renewed plaintiff's contract after plaintiff verbally agreed to a renewal, even though the contract required changes to be made by written agreement, because there was no "inference of a practice of deception"); *see also Alin v. Am. Honda Motor Co., Inc.*, 2010 WL 1372308, at *9 (D.N.J. 2010) (finding substantial aggravating factors where defendant "affirmatively acted in concealing a flaw in its vehicles" and "implemented its warranty policy with the intent that it would not honor it . . . .").

Plaintiff argues that substantial aggravating factors exist here. First, Plaintiff contends that the TWPP contract places the Administrator's name in an inconspicuous place, encouraging customers to cancel through the "Selling Dealer" and thereby creating an extra step for customers that may lead to delays in the cancellation process. (Opp'n to NSD at 15.) Similarly, Plaintiff claims the VSC's explicit requirement that customers cancel the contract through the dealership rather than the provider constitutes an aggravating factor. (Opp'n to NESNA at 14–15.) As an additional aggravating factor, Plaintiff argues that Defendant NESNA knew about her cancellation request—since it credited $3500.00 to her account—but still failed to pay the late fee. (*Id.*)

Plaintiff's claim that the TWPP hides the Administrator's name is unfounded.[3] Regardless, Plaintiff fails to make any showing that requiring a service contract to be canceled through the dealership where the service was originally purchased is a substantial aggravating factor outside the norm of reasonable business practice. Additionally, the fact that Defendant NESNA knew about Plaintiff's cancellation does not make its failure to pay the late fee a

---

[3] The cancellation provision of the TWPP, a three-page contract, states: "To initiate the cancellation process, **You** must contact the **Selling Dealer** or the Administrator." (Compl., Ex. D.) On that same page, a few sections below, there is a heading in all-caps, bolded and underlined, titled "**ADMINSTIRATOR**" that clearly provides the Administrator's contact information. (*Id.*) This can hardly be considered an attempt to hide the Administrator's identity.

"substantial aggravating circumstance." Instead, as Defendant NESNA correctly notes, these facts merely support a routine breach of contract action. (*See* NESNA Reply at 8, ECF No. 33.) Since Plaintiff has not plead any substantial aggravating factors, Defendant NESNA and Defendant NSD's alleged breaches of their cancellation provisions were not "unconscionable commercial practices" under the CFA.

Since there has been no unlawful practice within the meaning of the CFA, the Court will not assess whether there are ascertainable damages or a causal relationship. Plaintiff's allegations against Defendant NESNA and Defendant NSD for violations of the CFA are dismissed.

## IV.  Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure allows amendments of the pleadings with the court's leave, which should be freely given. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Plaintiffs are granted leave to file an amended complaint, in accordance with Local Civil Rule 15.1(b).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant NP Nissan's Motion to Dismiss is denied, Defendant NESNA's Motion to Dismiss is granted, and Defendant NSD's Motion to Dismiss is granted. An appropriate order will follow.

Date:   <u>October 17, 2019</u>

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.
